Justin F. Marquez (*PRO HAC VICE*)
justin@wilshirelawfirm.com
Thiago M. Coelho (*PRO HAC VICE*)
thiago@wilshirelawfirm.com
Robert J. Dart (*PRO HAC VICE*)
rdart@wilshirelawfirm.com
**WILSHIRE LAW FIRM**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

David C. Indiano, USDC PR Bar No. 2000601
david.indiano@indianowilliams.com
**INDIANO & WILLIAMS, P.S.C.**
207 del Parque Street, Third Floor
San Juan, Puerto Rico 00912
Telephone: (787) 641-4545
Facsimile: (787) 641-4544

*Attorneys for Plaintiffs*
*and Proposed Class Counsel*

# UNITED STATES DISTRICT COURT

## DISTRICT OF PUERTO RICO

| | |
|---|---|
| JESSIE SERRANO on her own behalf and on behalf of JOZEF MANGUAL SERRANO, a minor, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> INMEDIATA CORP., a Delaware corporation, INMEDIATA HEALTH GROUP CORP., a Puerto Rico corporation, and DOES 1 to 10, inclusive, <br><br> Defendants. | CASE NO.: 3:19-cv-01811 <br><br> **CLASS ACTION** <br><br> **FIRST AMENDED COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Jessie Serrano, on her own behalf and on behalf of her minor child, Jozef Mangual Serrano ("Plaintiffs"), individually and on behalf of all others similarly situated, brings this action based upon her and her son's personal knowledge as to themselves and their own acts,

WILSHIRE LAW FIRM, PLC<br>3055 Wilshire Blvd., 12th Floor<br>Los Angeles, CA 90010-1137

1    and as to all other matters upon information and belief, based upon, *inter alia*, the investigation

2    of their attorneys.

3                              **NATURE OF THE ACTION**

4        1.    Defendants Inmediata Corp. and Inmediata Health Group, Corp., ("Defendants"

5    or "Inmediata") operate a medical clearinghouse which forwards claims information from

6    healthcare providers to insurance payers, and also provides other information solutions to medical

7    providers and insurers.  Millions of patients count on Inmediata to handle their sensitive medical

8    and dental and personal information with care.

9        2.    These patients reasonably expect the highest level of protection for their private

10   identifiable information, when giving highly sensitive information such as their Social Security

11   numbers and medical and dental information to medical providers and insurers.  What these

12   patients do not expect, and did not expect, was that their personal and sensitive information would

13   be harvested by unauthorized individuals.

14       3.    Plaintiffs, individually and on behalf of those similarly situated persons (hereafter,

15   "Class Members"), bring this class action to secure redress against Defendants for their reckless

16   and negligent violation of patient privacy rights.  Plaintiffs and Class Members are individuals

17   whose billings were handled by Inmediata and were exposed by the data breach.

18       4.    Plaintiffs and Class Members suffered significant injuries and damages.  On

19   information and belief, the security breach compromised the full names, addresses, dates of birth,

20   gender, medical claim information, and social security numbers (referred to collectively as "PII")

21   of Plaintiffs and the Class Members.

22       5.    As a result of Defendants' wrongful actions and inactions, unauthorized

23   individuals gained access to and harvested Plaintiffs' and Class Members' PII.  Plaintiffs have

24   been forced to take remedial steps to protect themselves from future loss.  Indeed, all Class

25   Members are currently at a very high risk of identity theft and/or credit fraud, and prophylactic

26   measures, such as the purchase of credit monitoring, are reasonable and necessary to prevent and

27   mitigate future loss.

28

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

6.      As a result of Defendants' wrongful actions and inactions, patient information was stolen.   Many individuals whose billings were handled by Inmediata have had their PII compromised, have had their privacy rights violated, have been exposed to the risk of fraud and identify theft, and have otherwise suffered damages.

7.      Further, despite the fact that the breach was discovered in January 2019, Defendants did not begin notifying their customers of the event until April 22, 2019.  Defendants did take efforts to reach some of the affected persons on that date; however, many breach victims reported receiving multiple letters, some of which were addressed to the wrong person, indicating that Defendants did not in fact reach all persons affected by the breach at that time, and may not ever have reached them.

## THE PARTIES

8.      Plaintiff Jessie Serrano is a Puerto Rico citizen residing in San Juan, Puerto Rico.  Plaintiff Jozef Mangual Serrano is a minor living in Puerto Rico, whose interests in this lawsuit are being represented by his mother, Jessie Serrano.  Plaintiffs received medical care, the billing for which was handled by Inmediata, pursuant to which Inmediata obtained Plaintiffs' PII.  Plaintiffs were third-party beneficiaries to contracts between Inmediata and insurers, and/or between Inmediata and medical providers, which contained privacy policies protecting their PII.

9.      Plaintiffs are informed and believe that, as a result of the data breach that took place at Inmediata, Plaintiffs' PII was accessed by hackers.  As a result, Plaintiffs have to purchase credit and personal identity monitoring services to alert them to potential misappropriation of their identity and to combat risk of further identity theft.  At a minimum, therefore, Plaintiffs have suffered compensable damages because they will be forced to incur the cost of a monitoring service, which is a reasonable and necessary prophylactic step to prevent and mitigate future loss.  Exposure of Plaintiffs' PII as a result of the data breach has placed them at imminent, immediate and continuing risk of further identity theft-related harm.

10.     Defendant Inmediata Corp. is a Delaware corporation with its principal offices located in Charlotte, North Carolina.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

11.     Defendant Inmediata Health Group Corp. is a Puerto Rico corporation with its principal offices in San Juan, Puerto Rico.

12.     Plaintiffs are unaware of the true names, identities, and capacities of the defendants sued herein as DOES 1 to 10.  Plaintiffs will seek leave to amend this complaint to allege the true names and capacities of DOES 1 to 10 if and when ascertained.  Plaintiffs are informed and believe, and thereupon allege, that each of the defendants sued herein as a DOE is legally responsible in some manner for the events and happenings alleged herein and that each of the defendants sued herein as a DOE proximately caused injuries and damages to Plaintiffs and Class Members as set forth below.

13.     At all times Defendants acted as alter egos of each other such that the corporate entity must be bypassed to avoid an injustice.  Defendants operate a single business, offering clearinghouse and other payment and informational services to medical and dental providers and insurers, through a single website, https://portal.inmediata.com, on which two headquarters are identified, one in San Juan, Puerto Rico, and one in Charlotte, NC.  The same officers represent both companies.  Defendants are thus operated as a single entity.  On information and belief, the entities commingle funds and other assets, fail to maintain adequate records of minutes, are owned and controlled by the same parties, operate as a mere shell, instrumentality, or conduit of each other, disregard legal formalities, and fail to maintain an arm's length relationship.

14.     As used herein, "Defendants" shall refer to Inmediata and Does 1 to 10, collectively.

**JURISDICTION AND VENUE**

15.     This Court has subject matter jurisdiction over the claims asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), since some of the Class Members are citizens of a State different from the Defendants, there are more than 100 putative class members, and the amount in controversy exceeds $5 million.

16.     The Court has personal jurisdiction over Defendants because Plaintiffs' and Class Members' claims arise out Defendants' business activities conducted in Puerto Rico, which is listed as one of two headquarters on Defendants' website.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

17.     Venue is appropriate in this District because, among other things: (a) Plaintiffs resides in this District, (b) Defendants maintain offices in this District, where they conduct substantial business; (c) Defendants directed their activities at residents in this District; and (d) many of the acts and omissions that give rise to this Action took place in this judicial District.

18.     Venue is further appropriate in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct a large amount of their business in this District, and because Defendants have substantial relationships in this District.

## FACTUAL ALLEGATIONS

### *A.  The Data Breach*

19.     Defendants Inmediata operate a medical and dental clearinghouse which provides healthcare reimbursement process solutions to medical and dental providers and insurers.  In January, 2019, Inmediata "discovered that some electronic health information was left exposed online by a webpage setting that allowed search engines to index Inmediata's internal webpages used for business operations." https://healthitsecurity.com/news/mailing-error-for-inmediata-while-reporting-health-data-breach.  The Department of Health and Human Services has reported that 1,565,338 patients were impacted by the breach.  *Id*.

20.     On April 22, 2019, over three months later, Defendants began sending letters to the breach victims to inform them of the data breach.  However, many of these victims reported receiving multiple letters, some of which were addressed to the wrong recipient, indicating that many of the intended recipients of the letters did not receive the notification, and indeed never have.

21.     Defendants made repeated promises and representations to their clients, which formed a part of their contracts with those clients, that they would protect Plaintiffs' and the Class Members' PII from disclosure to third parties, including taking appropriate steps to safeguard their electronic databases.  Plaintiffs and the Class Members were the intended third party beneficiaries of those promises since it was their PII, and not Inmediata's or their clients', which was being purportedly safeguarded and since it was Plaintiffs and the Class Members, and not any other party, who would suffer the consequences of a data breach.  A motivating purpose of

the promise to protect Plaintiffs' and the Class Members' PII was thus to provide the benefit of data security to Plaintiffs and the Class Members. Further, permitting Plaintiffs and the Class Members to bring their own breach of contract action here is consistent with the objectives of the contracts and the reasonable expectations of the contracting parties because, as the medical providers and insurers cannot sue Inmediata, and as Plaintiff and the Class Members cannot sue the medical providers and insurers, for disclosing the patients' PII, there is no way for Plaintiffs and the Class Members to obtain redress for the breach of contract without allowing them to sue on their own behalf.

22.     Defendants promised that they would not disclose Plaintiffs' and the Class Members' PII to any unauthorized third parties. In fact, they allowed hackers to obtain it.

**B.   Defendants Had an Obligation to Protect Personal Information under Federal Law.**

23.     Defendants are entitles covered by HIPAA (*see* 54 C.F.R. § 160.102) and as such are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information").

24.     HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information." 45 C.F.R. § 164.502 (2009). HIPAA also requires that Defendants implement appropriate safeguards for this information. 45 C.F.R. § 164.530(c)(1) (2009). HIPAA additionally requires that Defendants provide notice of a breach of unsecured protected health information, which includes protected health information that is not rendered unusable, unreadable, or indecipherable—i.e. non-encrypted data—to unauthorized third parties. 45 C.F.R. § 164.404 (2009); 45 C.F.R. § 164.402 (2009).

25.     Additionally, HIPAA requires that Defendants:

(a) Implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights, *see* 45 C.F.R. § 164.312(a)(1);

(b) Implement policies and procedures to prevent, detect, contain, and correct security violations, *see* 45 C.F.R. § 164.306(a)(1);

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

(c) Protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information, *see* 45 C.F.R. § 164.306(a)(2);

(d) Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, *see* 45 C.F.R. § 164.306(a)(3);

(e) Ensure compliance with the HIPAA security standard rules by its workforce, *see* 45 C.F.R. § 164.306(a)(4); and

(f) Effectively train all members of its workforce on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. § 164.530(b).

26.     Defendants are prohibited by the Federal Trade Commission Act (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce."  The Federal Trade Commission has found that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the Federal Trade Commission Act.  *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 243 (3d Cir. 2015).

### D. Applicable Standards of Care

27.     In addition to their obligations under federal law, Defendants owed a duty to Plaintiffs and the Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.  Defendants owed a duty to Plaintiffs and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the PII of Plaintiffs and the Class Members.

28.     Defendants owed a duty to Plaintiffs and the Class Members to design, maintain, and test their computer system to ensure that the PII in Defendants' possession was adequately secured and protected.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

29.     Defendants owed a duty to Plaintiffs and the Class Members, to create and implement reasonable data security practices and procedures to protect the PII in their possession, including adequately training their employees and others who accessed PII within their computer systems on how to adequately protect PII.

30.     Defendants owed a duty to Plaintiffs and the Class Members to implement processes that would detect a breach of their data security systems in a timely manner.

31.     Defendants owed a duty to Plaintiffs and the Class Members to act upon data security warnings and alerts in a timely fashion.

32.     Defendants owed a duty to Plaintiffs and the Class Members to disclose if their computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to purchase insurance or other health care services from Defendants' or to entrust PII with Defendants.

33.     Defendants owed a duty to Plaintiffs and the Class Members to disclose in a timely and accurate manner when data breaches occurred.

34.     Defendants owed a duty of care to Plaintiffs and the Class Members because they were foreseeable and probable victims of any inadequate data security practices.  Defendants received the PII from other parties with the understanding that Plaintiffs and the Class Members expected their PII to be protected from disclosure.  Defendants knew that a breach of its data systems would cause Plaintiffs and the Class Members to incur damages.

### E.  Stolen Information Is Valuable to Hackers and Thieves

35.     It is well known, and the subject of many media reports, that PII is highly coveted and a frequent target of hackers.  Especially in the technology industry, the issue of data security and threats thereto is well known.  Despite well-publicized litigation and frequent public announcements of data breaches, Defendants maintained an insufficient and inadequate system to protect the PII of Plaintiffs and Class Members.

36.     Legitimate organizations and members of the criminal underground alike recognize the value of PII.  Otherwise, they would not aggressively seek and pay for it.  As previously seen in one of the world's largest data breaches, hackers compromised the card holder

data of 40 million of Target's customers.  *See* "Target: 40 million credit cards compromised," CNN Money, Dec. 19, 2013, *available* at http://money.cnn.com/2013/12/18/news/companies/target-credit-card/.  DataCoup is, in contrast, just one example of a legitimate business that pays users for personal information.  *See* http://money.com/money/3001361/datacoup-facebook-personal-data-privacy/.

37.     PII is highly valuable to hackers.  Identity thieves use stolen PII for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.  PII that is stolen from the point of sale are known as "dumps."  *See* Krebs on Security April 16, 2016, Blog Post, *available at* https://krebsonsecurity.com/2016/04/all-about-fraud-how-crooks-get-the-cvv/.  PII can be used to clone a debit or credit card.  *Id.*

38.     Once someone buys PII, it is then used to gain access to different areas of the victim's digital life, including bank accounts, social media, and credit card details.  During that process, other sensitive data may be harvested from the victim's accounts, as well as from those belonging to family, friends, and colleagues.

39.     In addition to PII, a hacked email account can be very valuable to cyber criminals.  Since most online accounts require an email address not only as a username, but also as a way to verify accounts and reset passwords, a hacked email account could open up a number of other accounts to an attacker.[1]

40.     As shown below, a hacked email account can be used to link to many other sources of information for an identity thief, including any purchase or account information found in the hacked email account.[2]

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

---

[1] Identity Theft and the Value of Your Personal Data, Trend Micro (Apr. 30, 2015), https://www.trendmicro.com/vinfo/us/security/news/online-privacy/identity-theft-and-the-value-of-your-personal-data.
[2] Brian Krebs, The Value of a Hacked Email Account, Krebs on Security (June 13, 2013, 3:14 PM), https://krebsonsecurity.com/2013/06/the-value-of-a-hacked-email-account/.

1

2

3

4

5

6

7

8

9

10

11

12

13

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137



14    41.    Hacked information can also enable thieves to obtain other personal information

15   through "phishing."   According to the Report on Phishing available on the United States,

16   Department of Justice's website: "AT&T, a large telecommunications company, had its sales

17   system hacked into, resulting in stolen order information including full names and home

18   addresses, order numbers and credit card numbers. The hackers then sent each customer a highly

19   personalized e-mail indicating that there had been a problem processing their order and re-

20   directing them to a spoofed website where they were prompted to enter further information,

21   including birthdates and Social Security numbers."[3]

22   ***D. The Data Breach Has Resulted and Will Result in Identity Theft and Identity Fraud***

23    42.    Defendants failed to implement and maintain reasonable security procedures and

24   practices appropriate to protect the PII of Plaintiffs and Class Members.

25    43.    The ramifications of Defendants' failure to keep Plaintiffs' and Class Members'

26   PII secure is severe.  According to Javelin Strategy and Research, "one in every three people who

27   is notified of being a potential fraud victim becomes one . . . with 46% of consumers who had

28
_____

[3] https://www.justice.gov/archive/opa/docs/report_on_phishing.pdf

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

cards breached becoming fraud victims that same year." "Someone Became an Identity Theft Victim Every 2 Seconds Last Year," Fox Business, Feb. 5, 2014 *available* at http://www.foxbusiness.com/personal-finance/2014/02/05/someone-became-identitytheft-victim-every-2-seconds-last-year.html.

44.     In the case of a data breach, simply reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems." *See* "Victims of Identity Theft," U.S. Department of Justice, Dec 2013, *available at* https://www.bjs.gov/content/pub/pdf/vit12.pdf. In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims." *Id.* at 11.

45.     A person whose PII has been obtained and compromised may not know or experience the full extent of identity theft or fraud for years. It may take some time for the victim to become aware of the theft or fraud. In addition, a victim may not become aware of fraudulent charges when they are nominal, because typical fraud-prevention algorithms fail to capture such charges. Those charges may be repeated, over and over again, on a victim's account, without notice for years.

46.     The damage from PII exposure is particularly acute in the medical context. A study by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage. *See* Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (Mar. 3, 2010, 5:00 a.m.), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/. Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve their identity theft at all. *Id.*

**F.     Annual Monetary Losses from Identity Theft are in the Billions of Dollars**

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

47.     According to the BJS, an estimated 17.6 million people were victims of one or more incidents of identity theft in 2014.  Among identity theft victims, existing bank or credit card accounts were the most common types of misused information.  *Id*.

48.     Javelin Strategy and Research reports that losses from identity theft reached $21 billion in 2013.  There may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

See GAO, Report to Congressional Requesters, at 33 (June 2007), *available at* http://www.gao.gov/new.items/d07737.pdf.

49.     As a result of the data breach, Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiffs and Class Members are also subject to a higher risk of phishing and pharming where hackers exploit information, they already obtained in an effort to procure even more PII.  Plaintiffs and Class Members are presently incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges incurred by them and the resulting loss of use of their credit and access to funds, whether or not such charges are ultimately reimbursed by the credit card companies. In addition, Plaintiffs and Class Members now run the risk of unauthorized individuals creating credit cards in their names, taking out loans in their names, and engaging in other fraudulent conduct using their identities.

### G.   *Plaintiffs and Class Members Suffered Damages*

50.     The exposure of Plaintiffs' and Class Members' PII to unauthorized third-party hackers was a direct and proximate result of Defendants' failure to properly safeguard and protect Plaintiffs' and Class Members' PII from unauthorized access, use, and disclosure, as required by their contracts with Plaintiffs and the Class Members, and state and federal law.  The data breach

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

was also a result of Defendants' failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class Members' PII in order to protect against reasonably foreseeable threats to the security or integrity of such information, also required by their contracts and state and federal law

51.     Plaintiffs' and Class Members' PII is private and sensitive in nature and was inadequately protected by Defendants.  Defendants did not obtain Plaintiffs' and Class Members' consent to disclose their PII, except to certain persons not relevant to this action, as required by applicable law and industry standards.

52.     As a direct and proximate result of Defendants' wrongful actions and inaction and the resulting data breach, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the subject data breach on their lives by, among other things, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity.

53.     Defendants' wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class Members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a.     The improper disclosure, compromising, and theft of their PII;

b.     The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of unauthorized third-party hackers and misused via the sale of Plaintiffs' and Class Members' information on the Internet black market;

c.     The untimely and inadequate notification of the data breach;

d.     Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach; and

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

e.      Ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market.

**H. Now that Plaintiffs' and the Class Members' PII Has Been Exposed to Hackers, Plaintiffs and the Class Members Face a Grave and Significant Chance of Identity Theft.**

54.      In 2019, 14.4 million consumers became victims of identity theft, which means that about 1 in 15 people were victims.  https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime.  In fact, 33% of Americans have experienced identity theft, more than twice the global average,  https://www.proofpoint.com/us/newsroom/press-releases/global-cybersecurity-awareness-survey-reveals-33-percent-us-respondents-have,  and there is a new victim of identity theft every two seconds.  https://clark.com/technology/theres-a-new-victim-of-identity-theft-every-two-seconds-heres-the-best-way-to-protect-yourself-online/.

55.      Accordingly, when records, including social security number, are exposed online for anyone, including hackers, to download, there is always a grave and significant risk that actual identity theft will occur.  That is the case here.  Plaintiffs' and the Class Members' private medical and personal information, including social security numbers, were left exposed online for hackers to download.  Given that hackers go through great lengths to hack into business' systems to obtain this data, it is more than likely that hackers would take advantage of Inmediata's lapse and take these records as soon as they were exposed.  Hacking has become, sadly, commonplace in corporate America.  An entity with Defendant's size should expect to be attacked, and should know that, if it voluntarily places patient PII for anyone to see on the internet, that PII is likely to be stolen.

**I. Plaintiffs and the Class Members Suffered Losses as to the Value of Their PII, Which Can Be Sold on an Ascertainable Market.**

56.      Plaintiffs' stolen data can be sold on both a black market and a reputable market, and the exposure of Plaintiffs' PII to nefarious individuals therefore constitutes a loss of value of that PII, which cannot now command the same price as it once commanded.

57.      According to Experian, the dark web is "a huge marketplace for stolen data and personal information," and, "[a]fter a data breach or hacking incident, personal information is

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

often bought and sold on the dark web by identity thieves looking to make money off [consumers'] good name." https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/. Experian has identified the going price for specific pieces of consumer information on the dark web, and found that medical records can be sold for as much as $1,000.00. *Id*. Experian further notes that "the economic principle of supply and demand applies to criminals buying and selling stolen information." *Id*.

58.     Individuals that risk criminal prosecution by stealing valuable private information through violating a business' electronic network are motivated to do so for financial gain.  It is well-established that criminals sell the stolen information to other criminals that use the information for nefarious purposes.[4]

59.     Therefore, the valuation of PII (an exclusive asset of the individual) can be derived from a well-established, highly publicized, and peer-reviewed "market approach" principle and methodology.[5] This approach is premised on the idea that the fair market value of an item, whether tangible or intangible in nature, is evidenced by the amount that buyers and sellers would negotiate for the item.  The market approach takes into account objective factors that buyers and sellers themselves – such as buyers and sellers of stolen PII – take into account in entering into a transaction.  If the market evidence is drawn from a market that is being made for the subject item and is based on what multiple, unrelated parties are offering and/or paying for the item, this methodology is highly favored.[6]

60.     Experian, a U.S. credit bureau, has reported a price of $30 for a bundle of information including name, Social Security number, birth date, account numbers, and other data.

---

[4] Examples of Dark Web sites include Dream, Empire and Wall Street.   Migliano, Simon, *Dark Web Market Price Index (US Edition)*, February 27, 2018. https://www.top10vpn.com/privacy-central/privacy/dark-web-market-price-index-feb-2018-us/.

[5] This approach is also referred to by a variety of other names, all having the same meaning.  One example is the "sales comparison approach."  The market approach has been well-publicized and applies to business ownership interests, tangible and intangible assets, personal property, real property, property of individuals, and property of business entities.  Academic discussion of the approach or methodology is often given in the context of a specific asset type (most often a business ownership interest) but is widely understood to be applicable across many forms of property.

[6] https://www.jdsupra.com/legalnews/delaware-court-of-chancery-confirms-81375/.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Top10VPN, a secure network provider, having reviewed thousands of listings, observed the following prices for stolen PII:

Online Banking Details:      $160.15

Credit Reports:              $35.00

Passport:                    $62.61

Further, PII is available for sale on the legitimate market through services such as DataWallet and Panel App.   https://www.moneymagpie.com/make-money/make-money-selling-your-personal-data.  Plaintiffs could have sold their data through these services had it not been compromised, and its value reduced.  Plaintiffs have suffered real, tangible losses in the form of loss of the value of their PII, which have a significant market value as shown.  For instance, companies such as Facebook have spent billions of dollars on acquisitions of social media websites for the primary purpose, if not the sole purpose, of acquiring consumer PII.  In April 2012, when Facebook purchased Instagram for $1 billion, it essentially paid $33.85 per Instagram user.  In February 2014, when Facebook purchased WhatsApp for $20 billion, it essentially paid $44.70 per user.  These significant amounts demonstrate the value of consumers' PII on the market, a value which, for Plaintiff and the Class Members, was lost when their PII was exposed to hackers.

## CLASS ACTION ALLEGATIONS

61.     Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated under Rule 23(a), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.  The Class is divided into five Classes as follows:

The Puerto Rico Class:

All persons residing in the Territory of Puerto Rico whose Personal Identifying Information was compromised as a result of the breach discovered by Inmediata Corp. and/or Inmediata Health Group Corp. in January 2019, excluding all persons other than Plaintiffs who have filed Class Action lawsuits as Named Plaintiffs against Inmediata Corp. and/or Inmediata Health Group Corp. as a result of said breach.

The National Class:

All persons residing in the United States whose Personal Identifying Information was compromised as a result of the breach discovered by

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

16

Inmediata Corp. and/or Inmediata Health Group Corp. in January 2019, excluding all persons other than Plaintiffs who have filed Class Action lawsuits against Inmediata Corp. and/or Inmediata Health Group Corp. as a result of said breach.

62.     Excluded from the Class are: (a) Defendants, including any entity in which any of the Defendants has a controlling interest, is a parent or a subsidiary of, or which is controlled by any of the Defendants; (b) the officers, directors, and legal representatives of Defendants; and (c) the judge and the court personnel in this case as well as any members of their immediate families. Plaintiffs reserves the right to amend the definition of the Class if discovery, further investigation and/or rulings by the Court dictate that it should be modified.

63.     *Numerosity.* The members of the Class are so numerous that the joinder of all Class Members is impractical.  While the exact number of Class Members is unknown to Plaintiffs at this time, given the number of persons reported to be affected by the breach, it stands to reason that the number of Class Members is in the millions.  Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, such as account information.

64.     *Commonality and Predominance.* There are questions of law and fact common to Class Members, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

> a.   Whether Defendants owed a duty of care to Plaintiffs and Class Members with respect to the security of their PII;
>
> b.   What security measures must be implemented by Defendants to comply with their duty of care;
>
> c.   Whether Defendants met the duty of care owed to Plaintiffs and the Class Members with respect to the security of the PII;
>
> d.   Whether Defendants have a contractual obligation to Plaintiffs and Class Members to use reasonable security measures;
>
> e.   Whether Defendants have complied with any contractual obligation to use reasonable security measures;

17

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd. 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

f.  What security measures must be implemented by Defendants to comply with their contractual obligations to use reasonable security measures;

g.  Whether Defendants' acts and omissions described herein violated the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E.

h.  Whether Defendants' acts and omissions described herein violated the Federal Trade Commission Act (15 U.S.C. § 45);

i.  What security measures, if any, must be implemented by Defendants to comply with its contractual and statutory obligations;

j.  The nature of the relief, including equitable relief, to which Plaintiffs and Class Members are entitled; and

k.  Whether Plaintiffs and Class Members are entitled to damages, civil penalties and/or injunctive relief.

65.  *Typicality*. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII, like that of each of the other Class Members, was exposed and/or improperly disclosed by Defendants.

66.  *Adequacy of Representation*. Plaintiffs will fairly and adequately represent and protect the interests of the Class Members.  Plaintiffs have retained competent counsel experienced in litigation of class actions, including consumer and data breach class actions, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs and Class Members have a unified and non-conflicting interest in pursuing the same claims and obtaining the same relief.  Therefore, all Class Members will be fairly and adequately represented by Plaintiffs and their counsel.

67.  *Superiority of Class Action*. A class action is superior to other available methods for the fair and efficient adjudication of the claims alleged in this action. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims.  There will be no difficulty in the management of this action as a class action, and the disposition of the claims of the Class Members in a single action will provide substantial benefits to all parties and to the Court.  Damages for any individual

18

Class Member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied.

68.     Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class Members, such that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## FIRST CAUSE OF ACTION

(Breach of Express And/or Implied Contractual Promise against all Classes)

69.     Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 68, inclusive, of this First Amended Complaint as if set forth fully herein.

70.     Defendants were parties to contracts with Plaintiffs' and the Class Members' medical providers and/or insurers, pursuant to which Defendants obtained Plaintiffs' and the Class Members' PII for the purposes of billing and/or claims processing.

71.     As a part of these contracts, Defendants promised to maintain adequate safeguards to protect the PII from disclosure to unauthorized third parties, and also promised not to disclose the PII to unauthorized third parties.

72.     Plaintiffs and the Class Members were the intended third party beneficiaries of these promises since it was their PII, and not their medical providers' or insurers', which was promised to be safeguarded and since it was Plaintiffs and the Class Members, and not their medical providers or insurers, who would suffer the consequences of a data breach. A motivating purpose of the promise to protect Plaintiffs' and the Class Members' PII was thus to provide the benefit of data security to Plaintiffs and the Class Members.

73.     Further, permitting Plaintiffs and the Class Members to bring their own breach of contract action here is consistent with the objectives of the contract and the reasonable expectations of the contracting parties because, as the medical providers and insurers cannot sue Defendants for disclosing their patients' PII, and as Plaintiffs and the Class Members cannot sue

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

their medical providers and insurers for the data breach, there is no way for Plaintiffs and the Class Members to obtain redress for the breach of contract without allowing them to sue on their own behalf.

74. Accordingly, Defendants' promises to safeguard and protect the PII are contractually binding upon Defendants with regard to Plaintiffs and each of the Class members.

75. The contractual duty to protect and safeguard Plaintiffs' and the Class Members' PII, which Defendants promised to undertake, was, even apart from the language of the contracts, a term of the contracts by operation of law under the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E., and under Federal Trade Commission Act (15 U.S.C. § 45). Under applicable common law, all laws in place at the time a contract is entered which are relevant to the subject matter of that contract become binding terms of the contract. Therefore, the HIPAA Privacy Rule and Security Rule, and the FTCA also formed a contractual term in each of Defendants' contracts with Plaintiffs' and the Class Members' medical providers and insurers.

76. Finally, the promise to safeguard and protect Plaintiffs' and the Class Members' PII, and keep that PII from being accessed by third parties, was implied as a matter of law because Defendants and the other contracting parties entered their agreements with the expectation and implied mutual understanding that Defendants would strictly maintain the confidentiality of the PII and safeguard it from theft or misuse.

77. Therefore, Plaintiffs and Class Members are third-party beneficiaries of the contracts between Defendants and Plaintiffs' and the Class Members' medical providers and/or insurers in which Defendants agreed to: (a) implement and maintain reasonable security procedures to protect Plaintiffs' and Class Members' personal information from unauthorized access, destruction, use, modification, or disclosure; and (b) prevent unauthorized third parties from obtaining access to Plaintiffs' and Class Members' PII.

78. Plaintiffs' and the Class Members' medical providers and/or insurers would not have provided and entrusted the PII to Defendants in the absence of the proper security safeguards and the promise to keep their PII safe.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

79.    Plaintiffs' and the Class Members' medical providers and/or insurers fully performed their obligations under their agreements with Defendants.

80.    Defendants breached the contractual promises by failing to: (a) implement and maintain reasonable security procedures to protect Plaintiffs' and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure; and (b) prevent unauthorized third parties from obtaining access to Plaintiffs' and Class Members' PII.

81.    Plaintiffs' and the Class Members' expectation was that their PII would be safeguarded and protected.  Therefore, they agreed to pricing terms with their medical providers and/or insurers to which they would not have agreed had they known that their PII would not be protected.  Further, due to the fact that their PII was not protected, Plaintiffs and the Class Members incurred losses associated with the loss of PII privacy, including theft, identity theft, and the risk of theft and identity theft, along with the necessity of cancelling credit cards and paying for additional protection through the market.

82.    As a direct and proximate result of Defendants' breaches of the contractual promises alleged herein, Plaintiffs and Class Members sustained actual losses and damages in an amount according to proof at trial but in excess of the minimum jurisdictional requirement of this Court.

## SECOND CAUSE OF ACTION

(Breach of Covenant of Good Faith and Fair Dealing against all Classes)

83.    Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 82, inclusive, of this First Amended Complaint as if set forth fully herein.

84.    Applicable law implies a covenant of good faith and fair dealing in every contract.

85.    Plaintiffs and Class Members were the third-party beneficiaries of contracts between their medical providers and/or insurers and Defendants.

86.    The contracting medical providers and/or insurers performed all of their duties under their agreements with Defendants.

87.    All of the conditions required for Defendants' performance under the contracts

WILSHIRE LAW FIRM, PLC<br>3055 Wilshire Blvd, 12th Floor<br>Los Angeles, CA 90010-1137

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

have occurred.

88.     Incorporated in the contracts as a matter of law was the covenant of good faith and fair dealing, which prevents a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement.  The implied covenant imposes on a contracting party not only the duty to refrain from acting in a manner that frustrates performance of the contract, but also the duty to do everything that the contract presupposes that the contracting party will do to accomplish its purposes.

89.     Here the implied covenant of good faith and fair dealing required Defendants, under the terms of their agreement which stated that Defendants would protect the PII, to safeguard and protect from disclosure to third parties the PII of Plaintiffs and the Class Members which was turned over to Defendants only for the purposes of performing or procuring professional services.  Plaintiffs and the Class Members could not enjoy Defendants' services without the safeguarding and protection of the PII.

90.     Defendants breached the covenant of good faith and fair dealing implied in their contracts by engaging in the following conscious and deliberate acts: (a) failing to implement and maintain reasonable security procedures to protect Plaintiffs' and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure; and (b) failing to ensure that unauthorized parties were not provided access to Plaintiffs' and Class Members' PII.  Defendants' failure to protect the PII of Plaintiffs and Class Members frustrated Plaintiffs' and the Class Members' rights to the benefit of their medical providers' and/or insurers' bargains with Defendant, to enjoy the professional services of Defendant without incurring risks of property and identity theft.

91.     Plaintiffs and Class Members have lost the benefit of their medical providers' and/or insurers' contracts by having their PII compromised and have been placed at an imminent, immediate and continuing risk of identity theft-related harm.

92.     As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

requirement of this Court.

## THIRD CAUSE OF ACTION

(Negligence against all Classes)

93.     Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 92, inclusive, of this First Amended Complaint as if set forth fully herein.

94.     As described above, Defendants owed Plaintiffs and the Class Members duties of care in the handling of PII, which duties included keeping that PII safe and preventing disclosure of that PII to all unauthorized third parties.

95.     Additionally, Defendants owed a duty to Plaintiffs and the Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class Members' PII as required by HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E, and Federal Trade Commission Act (15 U.S.C. § 45). This legal duty arises outside of any contractual, implied or express, responsibilities that Defendants had between Plaintiffs and Class Members, as it is completely independent of any contract.

96.     HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information." 45 C.F.R. § 164.502 (2009). HIPAA also requires that Defendants implement appropriate safeguards for this information. 45 C.F.R. § 164.530(c)(1) (2009). HIPAA additionally requires that Defendants provide notice of a breach of unsecured protected health information, which includes protected health information that is not rendered unusable, unreadable, or indecipherable—i.e. non-encrypted data—to unauthorized third parties. 45 C.F.R. § 164.404 (2009); 45 C.F.R. § 164.402 (2009).

97.     Additionally, HIPAA requires that Defendants:
(a) Implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights, *see* 45 C.F.R. § 164.312(a)(1);
(b) Implement policies and procedures to prevent, detect, contain, and correct security violations, *see* 45 C.F.R. § 164.306(a)(1);
(c) Protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information, *see* 45 C.F.R. § 164.306(a)(2);

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

(d) Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, *see* 45 C.F.R. § 164.306(a)(3);

(e) Ensure compliance with the HIPAA security standard rules by its workforce, *see* 45 C.F.R. § 164.306(a)(4); and

(f) Effectively train all members of its workforce on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. § 164.530(b).

98.     Plaintiffs and Class Members are within the class of persons that HIPAA was intended to protect.

99.     Defendants violated the above listed regulations by disclosing the PII to third parties and by failing to implement adequate security measures to protect the PII, including failing to:

(a) Implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights;

(b) Implement policies and procedures to prevent, detect, contain, and correct security violations;

(c) Protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information;

(d) Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information;

(e) Ensure compliance with the HIPAA security standard rules by its workforce; and

(f) Effectively train all members of its workforce on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information.

100.    Defendants also violated §§ 164.404 (2009) and 164.402 (2009) by failing to provide timely notice of the breach to Plaintiffs and the Class Members.

101.    The harm that occurred as a result of the security breach is the type of harm that HIPAA was intended to guard against. HIPAA directly requires subject entities to protect the health information of individuals such as Plaintiffs and the Class Members.

102.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendants' duty in this

regard.

103.    Plaintiffs and Class Members are within the class of persons that the FTC Act was intended to protect.

104.    Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII it obtained and stored, and the foreseeable consequences of a data breach at a company as large as Defendants', including, specifically, the damages that would result to Plaintiffs and Class members.

105.    The harm that occurred as a result of the security breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and Class Members.

106.    Defendants' failure to comply with applicable laws and regulations constitutes negligence per se.

107.    In addition to their obligations under state and federal law, Defendants owed a duty to Plaintiffs and the Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.  Defendants owed a duty to Plaintiffs and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the PII of Plaintiffs and the Class Members.

108.    Defendants owed a duty to Plaintiffs and the Class Members to design, maintain, and test their computer system to ensure that the PII in Defendants' possession was adequately secured and protected.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

109.    Defendants owed a duty to Plaintiffs and the Class Members to create and implement reasonable data security practices and procedures to protect the PII in their possession, including adequately training their employees and others who accessed PII within their computer systems on how to adequately protect PII.

110.    Defendants owed a duty to Plaintiffs and the Class Members to implement processes that would detect a breach of their data security systems in a timely manner.

111.    Defendants owed a duty to Plaintiffs and the Class Members to act upon data security warnings and alerts in a timely fashion.

112.    Defendants owed a duty to Plaintiffs and the Class Members to disclose if their computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to purchase insurance or other health care services from Defendants' or to entrust PII with Defendants.

113.    Defendants owed a duty to Plaintiffs and the Class Members to disclose in a timely and accurate manner when data breaches occurred.

114.    Defendants owed a duty of care to Plaintiffs and the Class Members because they were foreseeable and probable victims of any inadequate data security practices.  Defendants collected Plaintiffs' and the Class Members' PII.  Defendants knew that a breach of their data systems would cause Plaintiffs and the Class Members to incur damages.

115.    Defendants breached those duties of care by adopting inadequate safeguards to protect the PII, and, on information and belief, failing to adopt industry-wide standards in their supposed protection of the PII, resulting in the disclosure of the PII to unauthorized third parties.

116.    As a direct and proximate result of Defendants' failure to adequately protect and safeguard the PII, Plaintiffs and the Class members suffered damages.  Plaintiffs and the Class Members were damaged because their PII was accessed by third parties, resulting in increased risk of identity theft and theft of property, and for which Plaintiffs and the Class members were forced to adopt costly and time-consuming preventive and remediating efforts.  Plaintiffs and the Class Members were also damaged in that they paid for services in an amount that they would have refused to pay had they known that Defendants would not protect their PII.  Plaintiffs and

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

the Class Members accepted pricing terms which they would not have agreed to had they known that Defendants would not protect their PII.

117.    Defendants acted with wanton disregard for the security of Plaintiffs' and the Class Members' PII.  Defendants knew or should have known that Defendants had inadequate computer systems and data security practices to safeguard such information, and Defendants knew or should have known that hackers were attempting to access the PII of health care related companies' databases, such as Defendants'.

118.    The injury and harm suffered by Plaintiffs and the Class Members was the reasonably foreseeable result of Defendants' breach of their duties.  Defendants knew or should have known that they were failing to meet their duties, and that Defendants' breach would cause Plaintiffs and the Class Members to experience the foreseeable harm associated with the exposure of their PII.

119.    A "special relationship" exists between Defendants and Plaintiffs and the Class Members.  Defendants entered into a "special relationship" with Plaintiffs and the Class Members when they contracted with Plaintiffs' and the Class Members' medical providers and insurers and obtained Plaintiffs' and the Class Members' PII from them.  As providers of health care related services, Defendants stand in a fiduciary or quasi-fiduciary relationship with Plaintiffs and the Class Members.

120.    Plaintiffs and the Class Members have suffered monetary injury in fact as a direct and proximate result of the acts committed by Defendants as alleged herein in an amount to be proven at trial but in excess of the minimum jurisdictional amount of this Court.

## FOURTH CAUSE OF ACTION

(Violation of California's Confidentiality of Medical Information Act, Cal. Civ. Code § 56 et seq, on behalf of the California Class)

121.    Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 120, inclusive, of this First Amended Complaint as if set forth fully herein.

122.    Inmediata is a "Contractor" as defined by Cal. Civ. Code § 56.05(d) and/or a

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

27

"Provider of Health Care" as expressed in Cal. Civ. Code § 56.06.

123.   Plaintiffs and Class Members are "Patients" as defined by Cal. Civ. Code § 56.05(k).

124.   The Plaintiffs' and Class Members' Personal Information that was the subject of the Inmediata data breach described herein included "Medical Information" as defined by Cal. Civ. Code § 56.05(j).

125.   In violation of California's Confidentiality of Medical Information Act, Inmediata disclosed Medical Information of Plaintiffs and Class Members without first obtaining an authorization.

126.   In violation of California's Confidentiality of Medical Information Act, Inmediata intentionally shared, sold, used for marketing, or otherwise used Medical Information of Plaintiffs and Class Members for a purpose not necessary to provide health care services to Plaintiffs or Class Members.

127.   In violation of California's Confidentiality of Medical Information Act, Inmediata further disclosed Medical Information regarding Plaintiffs and Class Members to persons or entities not engaged in providing direct health care services to Plaintiffs or Class Members or their providers of health care of health care service plans or insurers or self-insured employers.

128.   In violation of California's Confidentiality of Medical Information Act, Inmediata created, maintained, preserved, stored, abandoned, destroyed, or disposed of Medical Information of Plaintiffs and Class Members in a manner that did not preserve the confidentiality of the information contained therein.

129.   In violation of California's Confidentiality of Medical Information Act, Inmediata negligently created, maintained, preserved, stored, abandoned, destroyed, or disposed of Medical Information of Plaintiffs and Class Members.

130.   In violation of California's Confidentiality of Medical Information Act, Inmediata's electronic health record systems or electronic medical record systems did not protect and preserve the integrity of Plaintiffs' and Class Members' Medical Information.

131.   In violation of California's Confidentiality of Medical Information Act, Inmediata

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

negligently released confidential information and records of Plaintiffs and Class Members.

132.     In violation of California's Confidentiality of Medical Information Act, Inmediata negligently disclosed Medical Information of Plaintiffs and Class Members.

133.     In violation of California's Confidentiality of Medical Information Act, Inmediata knowingly and willfully obtained, disclosed, and/or used Medical Information of Plaintiffs and Class Members.

134.     As a direct and proximate result of Inmediata's violation of Cal. Civ. Code § 56 *et seq.*, Plaintiffs and Class Members now face an increased risk of future harm.

135.     As a direct and proximate result of Inmediata's violation of Cal. Civ. Code § 56 et seq., Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

(Violation of the Minnesota Health Records Act, Minn. Stat. § 144.291 *et seq.*, on behalf of the Minnesota Class)

136.     Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 135, inclusive, of this First Amended Complaint as if set forth fully herein.

137.     Inmediata is a "Patient Information Service" as defined by Minn. Stat. § 144.291 (Sub-2)(h), a "Provider" as defined by Minn. Stat. § 144.291 (Sub-2)(i), and/or a "Related Health Care Entity" as defined by Minn. Stat. § 144.291 (Sub-2)(k).

138.     Plaintiffs and Class Members are "Patients" as defined by Minn. Stat. § 144.291(Sub-2)(g).

139.     The Plaintiffs' and Class Members' Personal Information that was the subject of the Inmediata data breach described herein included "Health Records" as defined by Minn. Stat. § 144.291(Sub-2)(d).

140.     The Plaintiffs' and Class Members' Personal Information that was the subject of the Inmediata data breach described herein included "Identifying Information" as defined by Minn. Stat. § 144.291(Sub-2)(d).

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

141.    The Plaintiffs' and Class Members' Personal Information that was the subject of the Inmediata data breach described herein included information in an "Individually Identifiable Form" as defined by Minn. Stat. § 144.291(Sub-2)(e).

142.    In violation of the Minnesota Health Records Act, Inmediata released Health Records of Plaintiffs and Class Members without first obtaining consent or authorization.

143.    In violation of the Minnesota Health Records Act, Inmediata negligently or intentionally released Health Records of Plaintiffs and Class Members.

144.    As a direct and proximate result of Inmediata's violation of Minn. Stat. § 144.291 *et seq.*, Plaintiffs and Class Members now face an increased risk of future harm.

145.    As a direct and proximate result of Inmediata's violation of Minn. Stat. § 144.291 *et seq.*, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, prays for relief as follows:

1.    For compensatory damages in an amount according to proof at trial;

2.    For affirmative injunctive relief mandating that Defendants implement and maintain reasonable security procedures and practices to protect Plaintiffs' and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure;

3.    For costs of suit and litigation expenses;

4.    For attorneys' fees under the common fund doctrine and all other applicable law; and

5.    For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demands a jury trial for all claims so triable.

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

Dated: April 27, 2021                    Respectfully submitted,

                                          /s/ *David C. Indiano*
                                         David C. Indiano USDC Bar No. 200601
                                         **INDIANO & WILLIAMS, P.S.C.**

                                          /s/ *Thiago M. Coelho*
                                         Thiago M. Coelho (*PRO HAC VICE*)
                                         Justin F. Marquez (*PRO HAC VICE*)
                                         Robert Dart (*PRO HAC VICE*)
                                         **WILSHIRE LAW FIRM**

                                         *Attorneys for Plaintiffs and the proposed class*

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL