UNITED STATES DISTRICT COURT

DISTRICT OF PUERTO RICO

| | |
|---|---|
| JESSIE SERRANO on her own behalf and on behalf of JOZEF MANGUAL SERRANO, a minor, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>INMEDIATA CORP., a Delaware corporation, INMEDIATA HEALTH GROUP CORP., a Puerto Rico corporation, and DOES 1 to 10, inclusive,<br><br>　　　　　　　Defendants. | CASE NO.: 3:19-cv-01811-JAG<br><br>NOTICE OF MOTION AND MOTION FOR: (1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; AND (2) CONDITIONAL CERTIFICATION OF SETTLEMENT CLASSES |

**I.　　INTRODUCTION**

Plaintiff Jessie Serrano, on her own behalf, on behalf of her minor son Jozef Mangual Serrano, and on behalf of the class she represents ("Plaintiffs" or "Named Plaintiffs") submits this brief in support of her motion for: (i) preliminary approval of class action settlement; and (ii) conditional certification of the settlement class on the terms set forth in their Class Action Settlement Agreement and Release (the "Settlement Agreement" or "Settlement").

As a result of arm's length negotiation, including mediation with the aid of the Hon. Daniel Wathen (Ret.) on July 31, 2020, the parties have reached a settlement. Plaintiffs respectfully submit that the Court should preliminarily approve the proposed Settlement Agreement, which would certify the class, provide for a settlement fund to be created in the amount of $1,125,000.00, and allow for class notice to go out to the Class Members. Further, the Settlement calls for a one-year subscription to Kroll's Web Watcher identity theft service with a retail value of approximately $47 per person. Plaintiffs estimate the total benefit enjoyed by the Class Members as thus being up to $14 million. When the benefits of the Settlement are weighed against the inherent risks of continued, protracted litigation, including potential defeat at certification, on the merits, or on appeal, it is clear that the Settlement is not only within a range of possible judicial approval, the

1

standard at this stage, but is also fair, adequate and reasonable.

The proposed settlement is the product of arm's length negotiations between sophisticated Parties and reflects a considered and fully informed exercise of judgment by the Parties, in light of their perception of their rights and the costs, delay and uncertainty of litigation. Consensual resolution of disputes of this nature has long been preferred, as the interested parties are in the best position to weigh the risks and benefits. To this end, judicial review of class settlements has been limited to determining whether the settlement is the product of fraud, overreaching or collusion and is, on the whole, fair adequate and reasonable to all concerned. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "A proposed settlement of a class action may be given preliminary approval 'where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval.'" *Trombley v. Bank of Am. Corp.*, No. 08-CV-456-JD, 2011 WL 3273930, at *5 (D.R.I. July 29, 2011) (quoting *Passafiume v. NRA Group, LLC*, 274 F.R.D. 424, 2010 WL 6641072, at *5 (E.D.N.Y. Nov. 30, 2010)) (internal quotation marks omitted); *see also In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R.2010). The Settlement proposed here should be approved, as it more than meets this standard.

## II.     PROCEDURAL BACKGROUND

### A.     Procedural History

This action was filed in this district on August 28, 2019, alleging causes of action arising from Defendants' data breach, in which the Department of Health and Human Services has reported that 1,565,338 patients were potentially impacted. Plaintiffs and Inmediata have no evidence, however, that any files were actually viewed by an unauthorized person, copied, or saved and have not discovered any evidence to suggest that any information potentially involved in this incident has been subject to actual or attempted misuse. The Complaint requested injunctive relief, damages, and attorneys' fees and expenses. After arm's length negotiations between counsel, the

Parties agreed to a settlement. In agreeing to the Settlement, Plaintiffs and Plaintiffs' Counsel have considered: (i) the benefits to the members of the Settlement Class (as hereinafter defined) by the creation and uses of the settlement fund; (ii) the facts developed during investigation and informal discovery and the law applicable thereto; (iii) the attendant risks of continued litigation and the uncertainty of the outcome of the litigation; and (iv) the desirability of permitting the Settlement to be consummated according to its terms. Plaintiffs and Plaintiffs' Counsel believe that the Settlement is fair, reasonable and adequate and is in the best interests of Plaintiffs and the Settlement Class.

### B.     Parties

Plaintiffs are persons whose Personal Information was potentially compromised as a result of the Security Incident discovered by Inmediata Corp. and/or Inmediata Health Group Corp. in January 2019.

Defendants operate a medical clearinghouse which forwards claims information from healthcare providers to insurance payers, and also provides other information solutions to medical providers and insurers.

### C.     The Terms of the Settlement

After formulating and agreeing on key terms of the Settlement, the Parties undertook the effort to reduce their understanding to a comprehensive Settlement Agreement and to prepare the papers necessary to seek court approval of such a settlement. The Settlement resolves the claims and defenses asserted in the litigation or covered by the Settlement Agreement in a way that avoids the cost and risk of further litigation and provides fair, adequate and reasonable compensation to the Class Members for the harms they have incurred as a result of the data breach. The settlement fund will be used to pay administrative costs, pay the cost of Kroll's Web Watcher Services for one year for Settlement Class Members who enroll, pay approved claims to Settlement Class Members, and only after those amounts have been paid, if sufficient funds remain in the fund, pay incentive awards to the Named Plaintiffs in the amount of $2,000 each, and pay attorneys' fees and costs for Class Counsel as approved by the Court. (Exhibit 1, Settlement Agreement ("SA"),

¶ 3.1.)  For these reasons, articulated more fully below, the Court should grant the Parties' joint motion for preliminary approval of the class action settlement, and for conditional certification of the Settlement Classes.

### 1.     Proposed Class

"Settlement Class" means: All persons in the United States whose Personal Information was potentially compromised as a result of the Security Incident discovered by Inmediata Corp. and/or Inmediata Health Group Corp. in January 2019.  Excluded from the Settlement Class are: (1) the Judge presiding over the Action, and members of his family; (2)  Inmediata, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers and directors; (3) Persons who properly execute and submit a request for exclusion prior to the expiration of the Opt-Out Period; (4) Persons who, as of the date the Court enters an Order granting Preliminary Approval of the settlement,  have brought on their own behalf suit filed in their own name (either pro per or through counsel) and have pending any lawsuits, arbitrations or administrative claims against any Defendant; and (5) the successors or assigns of any such excluded Persons.  (SA ¶ 1.36.)

### 2.     Relief to be Provided to Settlement Classes

Defendants agree to pay into a settlement fund $1,125,000.00 which will be paid out in the following list of priority.  First, the fund will be used to pay all administration expenses.  Second, the fund will be used to pay the cost of Kroll's Web Watcher Services for one year for Settlement Class Members who enroll.  Third, the fund will be used to pay approved claims to Settlement Class Members.  Fourth, the fund will be used to pay incentive awards to representative plaintiffs as approved by the court in the amount of $2,000.00 for each Named Plaintiff.  And only fifth will the fund be used to pay attorneys' fees and costs for Class Counsel as approved by the Court. (SA, ¶ 3.1).  Class counsel will accept the remainder of the fund, regardless of how little it is, as attorneys' fees, with the understanding that this remainder is likely to be less than 10% of the total value of the settlement ($14 million).  Class counsel will provide a lodestar cross-check for this

award with its Motion for Final Approval.

Payment of claims, the third stage of payments from the fund, will be made for out-of-pocket losses, which are verifiable unreimbursed costs or expenditures that a Settlement Class Member actually incurred and that are plausibly traceable to the Security Incident, including, without limitation, the following categories:

    **a)**    unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, health insurance fraud, falsified tax returns, or other documented misuse of Settlement Class Members' Personal Information;

    **b)**    costs incurred on or after January 1, 2019, associated with freezing or unfreezing credit with any credit reporting agency;

    **c)**    other miscellaneous expenses incurred related to any Out-Of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges;

    **d)**    credit monitoring costs that were incurred on or after January 1, 2019, through the date of the Settlement Class Member's Claim submission; and

    **e)**    hours for time spent taking actions intended to remedy fraud, identity theft, or other misuse of a Settlement Class Member's Personal Information that is plausibly traceable to the Security Incident.

(SA ¶ 3.2.2.)

    **3.**    **Settlement Administration**

The Settling Parties have agreed to recommend that the Court appoint ILYM Group as the Settlement Administrator. The Settlement Administrator shall be responsible for administrative tasks, which shall include, without limitation, (a) arranging for distribution of the Class Notice and Claim Form to Settlement Class Members; (b) making any mailings to Settlement Class Members required under this Agreement; (c) forwarding written inquiries from Settlement Class Members to Class Counsel or their designee; (d) establishing and maintaining the Settlement Website, subject to review and approval by the Settling Parties; (e) qualifying Claims submitted by Settlement Class Members; (f) distributing cash payments to Settlement Class Members; (g)

assisting Settlement Class Members in enrolling in Web Watcher Services; (h) providing notice of the Settlement to appropriate state and federal officials as required by federal law including pursuant to 28 U.S.C. § 1715 (CAFA Notice) and (i) otherwise assisting with implementing and administering the Agreement. (SA, ¶ 4.1.)

### 4. Notice of Settlement to Class Members

The Summary Notice to be emailed to Settlement Class Members is attached to the Settlement Agreement as Exhibit A, the Long Form Notice is attached to the Settlement Agreement as Exhibit B, and the Publication Notice is attached to the Settlement Agreement as Exhibit C. (SA ¶ 5.1.4.) As soon as practicable following entry of the Preliminary Approval Order, but in no event later than thirty days following the date of the Preliminary Approval Order, Defendants shall make all reasonable efforts to provide the Settlement Class List to the Settlement Administrator. (SA, ¶ 5.2.1.) Within forty-five (45) days following entry of the Preliminary Approval Order, or at such other time or as may be ordered by the Court, the Settlement Administrator shall commence the emailing of the agreed-upon individual Summary Notice to Settlement Class Members via email for those Settlement Class Members for whom the Settlement Administrator is able to develop an email address using its best efforts and shall have thirty (30) days to complete that process. (SA, ¶ 5.2.5.) Upon bounce-backs, the Settlement Administrator will make two additional attempts to achieve delivery. (SA, ¶ 5.2.6.) The Publication Notice will also be published as set forth in the Settlement Agreement, and a website will be created to house important settlement documents. (SA, ¶¶ 5.2.8, 5.2.9.)

### 5. Final Approval and Fairness Hearing

At a date set by the Court, the Settlement Agreement contemplates that the Court will hold a Final Approval and Fairness Hearing, and if the Settlement Agreement is approved, enter an Order of Final Approval that shall: (a) dismiss the Complaint with prejudice; (b) approve the Settlement, adjudging its terms to be fair, reasonable and adequate, and direct consummation of its terms and provisions; (c) approve Class Counsel's request for attorneys' fees and for a service award for the Named Plaintiffs, and (d) permanently enjoin all Class Members from presenting

against the Released Parties (as defined by the Settlement) any individual or Settlement Class claims that are released by the Settlement Agreement or which were or could have been asserted in the Action.

## III. THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE PROPOSED SETTLEMENT

### A. Standard for Determining Fairness, Adequacy, and Reasonableness of a Proposed Settlement

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class action settlement. "The fundamental duty of the Court when it reviews a settlement agreement for approval is to determine whether the proposed settlement is 'fair, reasonable and adequate.'" *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010) (citing Fed. R. Civ. P. 23(e)(2)); *see also In Re Relafen Antitrust Litig.*, 360 F.Supp.2d 166, 192 (D. Mass. 2005). "At the preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement; rather, the Court need only determine whether it falls within the range of possible approval." *Id.* (citing *Scott v. First Am. Title Ins. Co.*, No. 06–286, 2008 WL 4820498 at *3 (D. N.H. 2008); *see also In Re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534–35 (3d Cir. 2004); *Colella v. Univ. of Pittsburgh*, 569 F.Supp.2d 525, 527 (W.D.Pa.2008). An illegal or collusive settlement agreement will not fall within the range of possible approval. *See Scott*, 2008 WL 4820498 at *3.

In *In re Puerto Rican Cabotage Antitrust Litig.*, the court "adopted the standard set forth by the Third Circuit in *In Re General Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir.1995), and applied by the District Court for the District of Massachusetts in *In Re Lupron Market. And Sales Prac. Litig.*, 345 F.Supp.2d 135, 137 (D.Mass.2004)." 269 F.R.D. at 140. "Under the standard set forth in these cases, where the Court makes four findings, 'a presumption of fairness attaches to the court's determination' and preliminary approval is appropriate." *Id.* (quoting *In Re Lupron*, 345 F.Supp.2d at 137); *see also In Re General Motors*, 55 F.3d at 785). Those four findings are that: "(1) the negotiations occurred at arm's length; (2)

7

there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id*. These factors are not exhaustive, and this Court has a "wide discretion in assessing the weight and applicability of each factor." *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004).

This determination, while committed to the sound discretion of the Court, is to be made with deference to the judgment of the class representatives and their counsel, as "the court's intrusion upon what is otherwise a private consensual agreement between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. Accordingly, "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits," and the court must not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id*.

Instead, the purpose of the preliminary evaluation and approval of a proposed class action settlement is to determine whether the settlement is "within a range of possible judicial approval." *Wright v. Linkus Enterprises, Inc*., 259 F.R.D. 468, 472 (E.D. Cal. 2009) (*citing* Newberg on Class Actions §11:25 (4th ed. 2002)); *see also N. Cty. Contractor's Assn. v. Touchstone Ins. Servs.*, 27 Cal. App. 4th 1085, 1089, 33 Cal. Rptr. 2d 166 (1994) (describing this as a "reasonable range."). The preliminary approval is merely the prerequisite to giving notice to elicit the Class Members' reaction to the proposed Settlement Agreement and determine whether or not to opt out of the Nationwide Class. The preliminary approval process allows that to happen.

Lastly, as a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Util. Reform Project v. Bonneville Power Admin*., 869 F.2d 437, 443 (9th Cir. 1989).

The factors set forth in *In re Puerto Rican Cabotage Antitrust Litig.* weigh in favor of granting preliminary approval. First, the negotiations did in fact occur at arm's length, through a

8

contested mediation, with the help of the Hon. Daniel Wathen (Ret.) on July 31, 2020.  Second, while there was no formal discovery in this case, there was discovery for purposes of mediation which was sufficient to educate the parties as to the weaknesses and strengths of their cases.  As shown by the Declaration of Justin F. Marquez, filed herewith, Class Counsel is highly experienced in this area of the law, having acted as Class Counsel in numerous successful class actions, and having won commendation for his work.  And finally, at this stage, no class member has objected, nor is it expected that there will be many objections, since the Class Definition carves out Class Members who are litigating their own cases.  Those individuals may proceed with their cases.  In addition, the following factors weigh in favor of preliminary approval of the settlement.

### 1. Strength of Plaintiffs' Case

"When assessing the strength of [the] plaintiff's case, the court does not reach 'any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation.'" *Van Lith v. iHeartMedia + Entm't, Inc*., No. 1:16-CV-00066-SKO, 2017 WL 1064662, at *11 (E.D. Cal. Mar. 20, 2017) (*quoting Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quotations omitted).  Of course, the Court cannot fully assess the strength of the Plaintiff's case, because evidence has not been fully presented.  *Adoma*, 913 F. Supp. 2d at 975.  Instead, the Court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements."

While Plaintiffs and their counsel naturally believe that there is evidence from which the Court could rule in favor of Plaintiffs' claims, there are mitigating factors.  There is no evidence at present that the exposed data was ever obtained or used by hackers; all that is known is that it was available for public view for a specific period of time; accordingly, there is a real issue as to whether Plaintiffs will ever be able to prove damages.  Additionally, due to individualized issues related to harm resulting from the breach, there is a significant risk that a class would never be certified, were Plaintiffs' motion opposed.  Where a court determines that a claim may have "some measure of merit," but that it also faces inherent weaknesses, the court should find that the

"strength of Plaintiff's case" factor "weighs in favor" of final approval of the Settlement. *Van Lith*, 2017 WL 1064662, at *11.

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the degree of risk of continued litigation, "the court evaluates the time and cost required." *Adoma*, 913 F. Supp. 2d at 976. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

Of course, the risk and expense of continued litigation is obvious; absent settlement, the Parties would be required to continue litigation, which necessarily would involve significant discovery, a motion for certification which Defendants would surely contest, and other dispositive motions such as a motion for summary judgment and possible appeals. Once all is said and done, the ultimate recovery might be of no greater value – or of lesser value – to that in the proposed Settlement Agreement. Moreover, the process only becomes more complex over a longer period of time, as new issues emerge, for example, through discovery or simply determinations relating to case strategy. Accordingly, this factor clearly weighs in favor of approval. *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (finding that this factor favored approval where "there remained significant procedural hurdles for the putative class to confront, including certification" and "there were significant risks in continued litigation and no guarantee of recovery").

### 3. Relief Offered in Settlement

The relief offered in a settlement is assessed as a whole, "complete package" for overall fairness. *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting *Officers for Justice*, 688 F.2d at 628). Indeed, it is "well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (emphasis added) (citing *Linney*, 151 F.3d at 1242 (quotation omitted)).

Here, the relief includes approximately $14 million in benefit to the Class Members,

10

including one-year subscriptions to Kroll's Web Watcher identity theft service with a retail value of approximately $47 per person, and a settlement fund exceeding a million dollars which will be used to reimburse Class Members for costs incurred due to the breach. (SA, ¶ 3.1.) Payments to the Class Members will be prioritized over the service awards and attorneys' fees, such that real relief will be awarded to claimants who submit valid claims for loss. While a larger award is "theoretically possible, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Barbosa*, 297 F.R.D. at 447 (*quoting Linney*, 151 F.3d at 1242); *see also Hanlon*, 150 F.3d at 1027 (the fact that "the settlement could have been better…does not mean the settlement presented was not fair, reasonable, or adequate."). Accordingly, this factor weighs in favor of approval of the Settlement Agreement.

### 4. Arm's Length, Non-Collusive, Negotiated Resolution

This Circuit has held that it puts "a good deal of stock in the product of arms-length, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (*citing Hanlon*, 150 F.3d at 1027; *Officers for Justice*, 688 F.2d at 625). Critically, there is "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011) (emphasis added), *supplemented*, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

Here, Counsel for the Parties have separately initiated preliminary reviews of the applicable law and facts pertaining to the alleged claims, potential defenses thereto, and the damages claimed therein. Further, the parties engaged in an arm's length mediation with the Hon. Daniel Wathen (Ret.) on July 31, 2020, which resulted in the Settlement. The adversarial, non-collusive and at-arm's-length communications between the Parties' Counsel considered issues including, but not limited to, the following: (1) certification of a nationwide settlement class; (2) monetary remuneration for the Class Members; and (3) credit monitoring services to be purchased for the Class Members. The resulting proposed Settlement Agreement is the product of hours of such arm's length negotiations between the Parties, which allows for an initial presumption of fairness.

11

### 5. Experience and Views of Counsel, and Plaintiffs' and Counsel's Adequate Representation of the Class

"In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties." *Van Lith v. iHeartMedia + Entm't, Inc.*, No. 1:16-CV-00066-SKO, 2017 WL 1064662, at *13 (E.D. Cal. Mar. 20, 2017) (*citing Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013)). "Great weight is accorded to the recommendation of counsel, who are the most closely acquainted with the facts of the underlying litigation." *Id.* (*quoting Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (citation omitted). Accordingly, "absent fraud, collusion, or the like," the Court "should be hesitant to substitute its own judgment for that of counsel." *Id.* (*citing DIRECTV, Inc.*, 221 F.R.D. at 528).

Class Counsel has extensive experience in litigating consumer and employment class actions. (See Declaration of Justin F. Marquez ¶¶ 3-10.) Plaintiffs' counsel understood and appreciated the defenses and position of Defendants but believed Plaintiffs would ultimately succeed in the action. Considering the Parties' strongly divergent views, and their awareness of the burdens of proof necessary to establish liability for the claim and the potential challenges to bringing a Motion for Class Certification, the Parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation. The Parties have produced a result that they believe to be in their respective best interests. The Parties also have taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation. Plaintiffs also are aware of the burdens of proof necessary to establish liability for the claim asserted in the action, the defenses thereto, the difficulties in establishing damages for Plaintiffs, and the potential challenges to bringing a Motion for Class Certification.

### 6. The Settlement has no Obvious Deficiencies

Furthermore, because the Settlement Agreement has no obvious deficiencies, preliminary approval is proper. *See Mora v. Cal West Ag Services, Inc.*, 2019 WL 2084725, at *3 (E.D. Cal. 2019), *report and recommendation adopted*, 2019 WL 3760402 (E.D. Cal. 2019) (*citing* Newberg

on Class Actions §13:13 (5th ed. 2014)) ("The purpose of the initial review is to ensure that an appropriate class exists and that the agreement is non-collusive, without **obvious deficiencies**, and within the range of possible approval as to that class.") (emphasis added); *Maciel v. Bar 20 Dairy, LLC*, 2018 WL 5291969, at *3 (E.D. Cal. 2018) (*citing* Newberg on Class Actions §13:13 (5th ed. 2011) ("Though Rule 23 does not explicitly provide for such a procedure, federal courts generally find preliminary approval of settlement and notice to the proposed class appropriate if the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'") (emphasis added) (*quoting Lounibos v. Keypoint Government Solutions Inc.*, 2014 WL 558675, at *5 (N.D. Cal. 2014)). No such "obvious deficiencies" are present here. The settlement includes a sizeable fund for distribution to the Class Members and the purchase of credit monitoring services which will remedy the harm suffered by the Plaintiffs. It grants this relief priority over other payments. It is comprehensive in nature.

### B. The Proposed Method of Distributing Relief and Processing Class-Member Claims is Adequate

The distribution plans for the settlement fund, including plans to process claims, are also more than adequate. Plaintiffs have identified an experienced claims administrator who will handle claims processing and payment of the funds to the Class Members. The claims process is the most rational and reasonable means for distributing the funds to the Class Members, and will require proof of costs, except for time lost, which will be proven by a simple averment. These requirements are designed to exclude those persons who did not suffer loss while not dissuading Class Members from submitting a claim.

Proposed settlements are not judged against a hypothetical or speculative measure of what might have been achieved, as litigation is, by its nature, uncertain, and "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney*, 151 F.3d at 1242 (internal quotations omitted). The proposed settlement achieves a fundamentally

fair, adequate, and reasonable resolution of all relevant claims.

### C. The Agreement Treats Class Members Equally

The agreement provides that all Class Members who request it may receive a one-year subscription to top-of-the-line credit monitoring software. This is a benefit offered equally to all Class Members. Additionally, all Class Members who do not opt out of the Settlement may make a claim for reimbursement for costs, including time lost, as a result of the data breach. All Class Members have an equal opportunity to make their case for reimbursement. Accordingly, the Settlement treats all Class Members equally.

## IV. THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASSES

As part of the Settlement, the Parties also seek certification of the Settlement Class. In order to certify a class, "[a] district court must conduct a rigorous analysis of the prerequisites established by Rule 23." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir.2003) (citing Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). In doing so, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir.2000) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). "[W]hen confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id*. (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Nevertheless, "[w]hen a settlement class is proposed, it is incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members." *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D.Mass.2005) (citing *Amchem*, 521 U.S. at 620, 117 S.Ct. 2231). "This cautionary approach notwithstanding, the law

favors class action settlements." *Id.* (citing *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir.1996)).

Accordingly, district courts enjoy broad discretion in making such class certification determinations, *see Navellier v. Sletter*, 262 F.3d 923, 941 (9th Cir. 2001), so long as the following criteria are met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). All of these factors are present here, and therefore, conditional certification of the Settlement Classes is appropriate.

Lastly, class certification brought pursuant to Rule 23(b)(3) requires a determination that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy." For the purposes of the Settlement, the Parties agree that these criteria are satisfied under the lesser standard of scrutiny applicable here.

### A. Ascertainability

Although not found explicitly in Rule 23, ascertainability is an "implied requirement" and "essentially require[s] a putative class to be ascertainable with reference to objective criteria." William B. Rubenstein, Newberg on Class Actions §§ 3:1 (5th ed. 2017); *see also Matamoros v. Starbucks Corp.*, 699 F.3d 129, 139 (1st Cir. 2012) ("The presence of...an objective criterion overcomes the claim that the class is unascertainable."). Here, the class is fully ascertainable. The Class includes only individuals whose personal information was exposed due to the data breach suffered by Defendants; Defendants have already identified each of these individuals and sent them notice of the breach. Accordingly, the Class Members can clearly be ascertained according to objective criteria.

### B. Numerosity

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The First Circuit has characterized the

numerosity requirement as a "low threshold." *Garcia–Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir.2009). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Id*. (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir.2001)); *see also George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 173 (D.Mass.2012) ("[C]ourts have generally found that a class size of forty or more individuals will satisfy the numerosity requirement."). Here, numerosity is clearly met. According to Defendants' records, the Class is composed of 1,565,338 persons. Thus, the potential number of plaintiffs greatly exceeds 40.

  **C.** **Common Questions of Law or Fact**

"In assessing commonality, the court should inquire into 'the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'" *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 325 F.R.D. 529, 536 (D. Mass. 2017) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011)). "The plaintiff must show that there is a common contention capable of class-wide resolution such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id*. (quoting *Wal-Mart Stores*, 564 U.S. at 350).

Here, common questions include: (1) What was the level of care required of Defendants to protect the personal information of the Class Members? (2) Did Defendants fail to meet that level of care? and (3) Did Defendants' deficient data protection systems cause the data breach? Each of these questions is a common question which can be determined on a class-wide basis by investigation into Defendants' systems, and they are likely to drive the litigation, as it is Defendants' deficient systems which is central to a finding of liability here, and not any individualized issue relating to individual plaintiffs. Commonality is met.

  **D.** **Typicality**

"To meet the typicality prerequisite, the injuries of the named plaintiff must arise from the same events or course of conduct and be based upon the same legal theory as the injuries and

16

claims of the class." *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 325 F.R.D. at 536 (citing *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 260 (D. Mass. 2005)). "The named plaintiff is not typical of the class if his or her claim may be 'subject to unique defenses that would divert attention from the common claims.'" *Id*. (quoting Swack, 230 F.R.D. at 260).

Named Plaintiffs meet the typicality requirement because they allege injuries resulting from the same data breach that affected the entire Class, alleging causes of action arising from the same course of conduct—Defendants' refusal or inability to provide sufficient data protection—that applies to the Class Members. There are no individual defenses which apply to Named Plaintiffs which do not apply to the entire class. Their claims are based on the same legal theory as the Class Members'—that Defendants failed to adequately protect their personal information. Typicality is met.

### E. Adequacy of Representation

"Adequacy requires that the class representative will 'fairly and adequately protect the interests of the class.'" *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 325 F.R.D. at 536–37 (quoting Fed.R. Civ. P. 23(a)(4)). "The named plaintiff must show that 1) its interests align with the class interests and 2) its counsel is qualified to litigate the claims vigorously." *Id*. (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

Here, Named Plaintiffs' interests in prosecuting their Class Action and obtaining the most beneficial recovery possible is fully compatible with the Class Members' interests. The Named Plaintiffs have no conflicts relative to this case which prevent them from prosecuting it to its fullest on behalf of the Class Members. The Named Plaintiffs share with the Class Members the incentive to obtain the most complete recovery possible from Defendants in compensation for the harms that they caused.

Class Counsel is highly experienced in consumer and employment class actions and has devoted himself to prosecuting cases against large corporations for the benefit of large numbers of class members. (Marquez Decl., ¶ 10). Class Counsel has been highly successful and is highly regarded in this practice area. (*Id*.) Named Plaintiffs have chosen their counsel prudently.

17

### F. Rule 23(b)(3) Requirements

Finally, class certification under Rule 23(b)(3) requires a determination that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance requirement is 'far more demanding' than the commonality requirement in Rule 23(a),…but it does not require that each element of the claims is susceptible to class-wide proof.'" *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 325 F.R.D. at 537 (quoting *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015). The plaintiff need only prove that individualized questions will not "overwhelm" the common ones. *Id*. (citing *In re Nexium*, 777 F.3d at 21). Thus, the "need for some individualized determinations" will not defeat class certification. *Id*. (citing *In re Nexium*, 777 F.3d at 21).

Here, common questions—what standard of care Defendants were required to employ in protecting the data, whether Defendants met that standard of care, and whether Defendants' failures caused the breach—dominate the litigation as the central questions, and predominate over individual issues because they will dictate whether the Plaintiffs have proven their causes of action on behalf of the Class Members. The only individual questions go to damages, and individual questions as to damages cannot defeat predominance.

"The superiority criterion requires that class action be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 325 F.R.D. at 540 (quoting Fed. R. Civ. P. 23(b)(3)). "In evaluating superiority, courts consider 1) the interests of class members in individually litigating separate actions, 2) the extent and nature of existing litigation, 3) the desirability of concentrating the litigation of the claims in a one forum and 4) the difficulty in managing a class action." *Id*. (citing Fed. R. Civ. P. 23(b)(3)).

These factors all weigh in favor of certification. Individual recoveries would likely amount to only a few dollars and would not come close to covering the cost of litigating individual claims.

Thus, a class action is superior to other methods of efficient adjudication, because the cost of litigation for an individual plaintiff would be prohibitive as compared to the amount of an individual recovery, which could be nothing. The extent and nature of the litigation is such that real efficiencies would be drawn from the class mechanism, since so many of the central issues to be determined are class-wide issues. It is desirable to concentrate the litigation in one forum in order to defray the risk of inconsistent verdicts and redundant judgments in other districts. Finally, since this case has settled, there will be no issue as to manageability.

## V. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE

Courts have a wide degree of discretion in requiring notice of settlement of class claims certified under Rule 23(b)(2), as Rule 23(c)(2)(A) merely provides that "the court may direct appropriate notice to the class." Even in the more demanding context of a Rule 23(b)(3) opt-out class, notice is sufficient if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004), *quoting Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980).

The proposed Notices, appended as Exhibits A, B, and C to the Settlement Agreement, more than meet this standard. They inform Class Members of the general terms of the complex Settlement Agreement, advise them of their right to request exclusion from the Settlement, and to object at the Final Approval and Fairness hearing, and instruct them how to do so. Class Counsel will e-mail a copy of the Short Form Notice to each individual Class Member, whose email addresses may be ascertained, and publicize the Publication Notice with a 60-day banner ad campaign with estimated 100 million impressions, with ad placement through Google, Facebook, Instagram, YouTube, and other websites. In addition, the Notice will be published on the Settlement Website. These are sufficient and appropriate means of providing notice.

///

///

## VI. CONCLUSION

For the reasons set forth above, the Parties respectfully request preliminary approval of the proposed Settlement Agreement, and that the Settlement Classes be certified conditioned on final approval of the Settlement.

Dated: May 10, 2021                                             Respectfully submitted,

_____
Thiago M. Coelho (*pro hac vice*)
Justin F. Marquez (*pro hac vice*)
Robert Dart (*pro hac vice*)
**WILSHIRE LAW FIRM**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*s/David C. Indiano*
David C. Indiano USDC Bar No. 200601
Jeffrey M. Williams USDC Bar No. 202414
Vanesa Vicéns-Sánchez USDC Bar No. 217807

**INDIANO & WILLIAMS, P.S.C.**
207 del Parque Street, Third Floor
San Juan, Puerto Rico 00912
Telephone: (787) 641-4545
Facsimile: (787) 641-4544

*Attorneys for Plaintiffs and the proposed class*