UNITED STATES DISTRICT COURT

DISTRICT OF PUERTO RICO

| | |
|---|---|
| JESSIE SERRANO, on her own behalf and on behalf of JOZEF MANGUAL SERRANO, a minor, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INMEDIATA CORP.. a Delaware corporation, INMEDIATA HEALTH GROUP CORP., a Puerto Rico corporation, and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. 3:19-cv-01811-JAG<br><br>*Honorable Judge Jay A. Garcia-Gregory*<br><br>**DECLARATION OF JUSTIN F. MARQUEZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Complaint Filed:   August 28, 2019 |

I, Justin F. Marquez, declare as follows:

      1.      I am a Senior Partner at Wilshire Law Firm, PLC and counsel of record to Plaintiffs Jessie Serrano and Jozef Mangual Serrano ("Plaintiffs"). I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

      2.      I am admitted, in good standing, to practice as an attorney in the State of California, the Ninth Circuit Court of Appeals, and the United States District Courts for the Central, Southern, Eastern, and Northern Districts of California.

### Experience and Qualifications

      3.      Wilshire Law Firm was selected by Best Lawyers and U.S. News & World Report as one of the nation's Best Law Firms in 2021 and is comprised of over 20 attorneys and over 200 employees. Wilshire Law Firm is actively and continuously practicing in employment and consumer litigation, including extensively in data breach litigation, representing victims of data breaches in class actions in both state and federal courts throughout the country.

4. Wilshire Law Firm is qualified to handle this litigation because its attorneys are experienced in litigating consumer class action lawsuits, specifically those pertaining to data privacy and cybersecurity breaches. Wilshire Law Firm has handled, and is currently handling, numerous data privacy class action lawsuits, as well as class actions involving consumer rights more generally.

5. I graduated from the University of California, Los Angeles's College Honors Program in 2004 with Bachelor of Arts degrees in History and Japanese, magna cum laude and Phi Beta Kappa. As an undergraduate, I also received a scholarship to study abroad for one year at Tokyo University in Tokyo, Japan. I received my Juris Doctor from Notre Dame Law School in 2008.

6. My practice is focused on advocating for the rights of consumers and employees in class action litigation and appellate litigation. I am currently the primary attorney in charge of litigating several class action cases in state and federal courts across the United States.

7. I have received numerous awards for my legal work. From 2017 to 2020, Super Lawyers selected me as a "Southern California Rising Star." In 2016 and 2017, the National Trial Lawyers selected me as a "Top 40 Under 40" attorney. I am also rated 10.0 ("Superb") by Avvo.com.

8. I am on the California Employment Lawyers Association (CELA)'s Wage and Hour Committee and Mentor Committee, and I was selected to speak at CELA's 2019 Advanced Wage & Hour Seminar on the topic of manageability of class actions. Since 2013, I have actively mentored young attorneys through CELA's mentorship program.

9. I am also an active member of the Consumer Attorneys of California (CAOC). In 2020, I was selected for a position on CAOC's Board of Directors. I am also a member of CAOC's Diversity Committee, and I help assist the CAOC in defeating bills that harm employees. Indeed, I recently helped assist Jacqueline Serna, Esq., Legislative Counsel for CAOC, in defeating AB 443, which proposed legislation that sought to limit the enforceability

of California Labor Code § 226.

10. As the attorney responsible for day-to-day management of this matter at the Wilshire Law Firm, I have over ten years of experience with litigating class actions. In those class actions, I performed similar tasks as those performed in the course of prosecuting this action. My litigation experience includes:

   a. I served as lead or co-lead in negotiating class action settlements worth over $10 million in gross recovery to class members in 2020.

   b. To my knowledge, I am the only attorney to appear on each of the following *Top Verdict* lists for 2018 in California: Top 20 Civil Rights Violation Verdicts, Top 20 Labor & Employment Settlements, and Top 50 Class Action Settlements.

   c. As lead counsel, I prevailed against Bank of America by: winning class certification on behalf of thousands of employees for California Labor Code violations; defeating appellate review of the court's order certifying the class; defeating summary judgment; and defeating a motion to dismiss. *Frausto v. Bank of America, N.A.*, 334 F.R.D. 192, 2020 WL 1290302 (9th Cir. Feb. 27, 2020), 2019 WL 5626640 (N.D. Cal. Oct. 31, 2019), 2018 WL 3659251 (N.D. Cal. Aug. 2, 2018). The decision certifying the class in *Frausto* is also discussed in *Class Certification Under Fed. R. Civ. P. 23 in Action by Information Technology or Call Center Employees for Violation of State Law Wage and Hour Rules*, 35 A.L.R. Fed. 3d Art. 8.

   d. I was part of a team that defeated a motion to dismiss in *Thomas et al. v. Kimpton Hotel & Restaurant Group, LLC*, 3:19-cv-01860-MMC (N.D. Cal.), a consumer class action brought by victims of a data breach against the company that lost their data. The case is ongoing.

   e. I was named to the executive committee in a consolidated group of cases entitled *Stacy Priest et al. v. PIH Health, Inc.*, No. 20STCV05355 (Cal. Sup. Ct.), which are all consumer class actions brought by victims of a data breach against the company that lost their data. The case is ongoing.

f.  I was the primary author of the class certification and expert briefs in *ABM Industries Overtime Cases,* 19 Cal.App.5th 277 (2017), a wage and hour class action for over 40,000 class members for off-the-clock, meal period, split shift, and reimbursement claims. *ABM Industries Overtime Cases* is the first published California appellate authority to hold that an employer's "auto-deduct policy for meal breaks in light of the recordkeeping requirements for California employers is also an issue amenable to classwide resolution." *Id*. at p. 310.[1] Notably, the Court of Appeal also held that expert analysis of timekeeping records can also support the predominance requirement for class certification. *Id*. at p. 310-311.

g.  I briefed, argued, and won *Yocupicio v. PAE Group, LLC,* 795 F.3d 1057 (9th Cir. 2015). The Ninth Circuit ruled in my client's favor and held that non-class claims under California's Private Attorney Generals Act ("PAGA") cannot be used to calculate the amount in controversy under the Class Action Fairness Act ("CAFA"). This case is cited in several leading treatises such as *Wright & Miller's Federal Practice & Procedure*, and *Newberg on Class Actions*. In October 2016, the U.S. Supreme Court denied review of a case that primarily concerned *Yocupicio*. That effort was led by Theodore J. Boutrous, who brought the cert petition, with amicus support from a brief authored by Andrew J. Pincus.[2] Considering that leading Supreme Court practitioners from the class action defense bar were very motivated in undermining *Yocupicio* case, but failed, this demonstrates the national importance of the *Yocupicio* decision.

h.  On December 13, 2018, the United States District Court granted final approval of the $2,500,000 class action settlement in *Mark Brulee, et al. v. DAL Global Services,*

---

[1] As a California district court observed before the *ABM Industries Overtime* decision, "[t]he case law regarding certification of auto-deduct classes is mixed." *Wilson v. TE Connectivity Networks, Inc.*, No. 14-CV-04872-EDL, 2017 WL 1758048, at *7 (N.D. Cal. Feb. 9, 2017).

[2] http://www.chamberlitigation.com/cases/abm-industries-inc-v-castro

*LLC,* No. CV 17-6433 JVS(JCGx), 2018 WL 6616659 (C.D. Cal. Dec. 13, 2018) in which I served as lead counsel. In doing so, the Court found: "Class Counsel's declarations show that the attorneys are experienced and successful litigators." *Id.* at p. *10.

i. *Gasio v. Target Corp.,* 2014 U.S. Dist. LEXIS 129852 (C.D. Cal. Sep. 12, 2014), a reported decision permitting class-wide discovery even though the employer has a lawful policy because "[t]he fact that a company has a policy of not violating the law does not mean that the employees follow it, which is the issue here." The court also ordered defendant to pay for the cost of *Belaire-West* notice.

j. In 2013, I represented a whistleblower that reported that his former employer was defrauding the State of California with the help of bribes to public employees. The case, a false claims (*qui tam*) action, resulted in the arrest and criminal prosecution of State of California employees by the California Attorney General's Office.

k. In 2013, I was part of a team of attorneys that obtained conditional certification for over 2,000,000 class members in a federal labor law case for misclassification of independent contractors that did crowdsourced work on the Internet, *Otey v. CrowdFlower, Inc.*, N.D. Cal. Case No. 12-cv-05524-JST (MEJ), resulting in the following pro-plaintiff reported decisions:

   1) 2013 U.S. Dist. LEXIS 151846 (N.D. Cal. Oct. 22, 2013) (holding that an unaccepted Rule 68 offer doesn't moot plaintiff's claims, and granting plaintiff's motion to strike defendant's affirmative defenses based on *Twombly/Iqbal*).

   2) 2013 U.S. Dist. LEXIS 122007 (N.D. Cal. Aug. 27, 2013) (order granting conditional collective certification).

   3) 2013 U.S. Dist. LEXIS 95687 (N.D. Cal. July 8, 2013) (affirming the magistrate judge's discovery ruling which held that "evidence of other sources of income is irrelevant to the question of whether a plaintiff is

an employee within the meaning of the FLSA").

4) 2013 U.S. Dist. LEXIS 91771 (N.D. Cal. June 20, 2013) (granting broad discovery because "an FLSA plaintiff is entitled to discovery from locations where he never worked if he can provide some evidence to indicate company-wide violations").

l. From 2012 to 2013, I was part of a team of attorneys that obtained class certification for over 60,000 class members for off-the-clock claims, *Linares v. Securitas Security Services USA, Inc.*, Los Angeles Superior Court No. BC416555. We also successfully opposed subsequent appeals to the California Court of Appeal and California Supreme Court.

## **The Settlement Is Fair, Reasonable, and Adequate**

11. Class Counsel has conducted a thorough investigation into the facts of this case. Based on the foregoing informal discovery and their own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class Members in light of all known facts and circumstances, including the risk of significant delay, the defenses that could be asserted by Defendant both to certification and on the merits, trial risk, and appellate risk.

12. Based on my participation in the mediation on July 31, 2020, I can attest that the negotiations for Settlement occurred at arm's length with the help of the Honorable Daniel Wathen. The adversarial, non-collusive communications between the Parties' counsel considered issues including, but not limited to, the following: (1) certification of a nationwide settlement class; (2) monetary remuneration for the Class Members; and (3) credit monitoring services to be purchased for the Class Members. The resulting proposed Settlement Agreement is the product of hours of such arm's length negotiations between the Parties, which allows for a presumption of fairness.

13. Further, although no formal discovery was conducted, there was an informal discovery process for the purposes of mediation. This informal discovery was sufficient to

educate the parties as to the weaknesses and strengths of their respective cases. Finally, at this stage of the case, no Class Member has objected to the terms of the Settlement, nor is it expected that there will be objections since the Class Definition carves out those Class Members who are proceeding to litigate their own cases.

14. While Plaintiffs are confident in the merits of their claims, a legitimate controversy exists as to each cause of action. For instance, Plaintiffs concede that there is no evidence that the exposed data at issue has yet been obtained or misappropriated by hackers and, as a result, a controversy exists with regards to whether Plaintiffs will be able to prove damages. There are also individualized issues relating to the harm resulting from the breach, creating a hurdle for class certification. However, in my professional experience, even in cases where a meritorious claim has some unresolved weaknesses, the Court should and often does find that the strength of the plaintiff's overall case weighs in favor of approval of the settlement. I believe this rationale should undergird the Court's ruling here.

15. The Settlement obviates the significant risk that this Court may deny certification of all or some of Plaintiffs' claims. Furthermore, even if Plaintiffs obtained certification of all or some of the claims, continued litigation would be expensive – both in terms of time and monetary cost – involving a trial and possible appeals, and would substantially delay and reduce any recovery by the Settlement Class Members.

16. This settlement avoids the risks and the accompanying expense of further litigation. Although the parties engaged in informal discovery ahead of the mediation, the parties had not yet exchanged formal written discovery. Moreover, preparation for class certification and a trial remained for the Parties as well as the prospect of appeals in the wake of a disputed class certification ruling for Plaintiffs and/or adverse summary judgment ruling. Had the Court certified any claims, Defendant could move to decertify the claims. As a result, the parties would incur considerably more attorneys' fees and costs through trial.

17. The Net Settlement Amount available for Class Member settlement payments is estimated to be $14 million, including one-year subscriptions to Kroll's Web Watcher

identity theft service with a retail value of approximately $47 per person, and a settlement fund exceeding a million dollars which will be used to reimburse Class Members for costs incurred due to the breach. Under this Settlement Agreement, all Class Members will be treated equally. Given the litigation risks involved, the proposed settlement is well within the realm of being fair, reasonable, and adequate because the proposed settlement compensates Class Members for costs incurred while monitoring their personal and financial accounts for fraud as a result of the data breach.

18. Plaintiffs have identified an experienced claims administrator who will handle claims processing and payment of the funds to the Class Members. The claims process will require proof of costs, except for time lost, which will be proven by a simple averment. These requirements are designed to exclude those persons who did not suffer loss while not dissuading Class Members from submitting a claim. Given the sizeable fund for distribution to the Class Members, the purchase of credit monitoring services, which will remedy the harm suffered by Plaintiffs and Class Members, and the rational method of funds distribution, the proposed Settlement lacks any obvious deficiencies. I have personally reviewed the Settlement in this case and, for the foregoing reasons, I find it to be fair, adequate and reasonable and in the best interest of Plaintiffs and the Class Members.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 10th day of May, 2021, at Los Angeles, California.

*s/ Justin F. Marquez*
Justin F. Marquez, Esq.