UNITED STATES DISTRICT COURT

DISTRICT OF PUERTO RICO

| | |
|---|---|
| JESSIE SERRANO, on her own behalf and on behalf of JOZEF MANGUAL SERRANO, a minor, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INMEDIATA CORP., a Delaware corporation, INMEDIATA HEALTH GROUP CORP., a Puerto Rico corporation, and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. 3:19-cv-01811-JAG<br><br>*Honorable Judge Jay A. Garcia-Gregory*<br><br>**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Complaint Filed:   August 28, 2019 |

**TO THE HONORABLE COURT:**

NOW APPEAR Plaintiffs, **JESSIE SERRANO**, on her own behalf and on behalf of **JOZEF MANGUAL SERRANO**, a minor, individually and on behalf of all others similarly situated (hereinafter "Plaintiffs") by and through their undersigned counsel, and respectfully state, allege, and request as follows:

### I.    PRELIMINARY STATEMENT

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, counsel for Plaintiffs and the Settlement Class, Wilshire Law Firm, PLC and Indiano & Williams, P.S.C. (collectively, "Class Counsel"), respectfully submit this motion and memorandum of law in support of their application for an award of attorney's fees and expenses.[1]

---

[1] All terms with initial capitalization not otherwise defined herein shall have meanings ascribed to them in the Notice of Settlement filed with the Court on May 11, 2021 (Dkt. No. 34) and the Declaration of Justin F. Marquez in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Marquez Decl."), the Declaration of David Indiano in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Indiano Decl."), the Declaration of Thiago M. Coelho in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Coelho Decl.") and the Declaration of Jesse S.

Under the terms of the Settlement Agreement, Class Counsel have obtained a proposed settlement valued at more than $14 million. The Settlement Agreement provides a one-year subscription to Kroll's Web Watcher identity theft service to all Settlement Class Members, which carries a retail value of approximately $47 per person. Considering that there are 1,565,338 class members, if only 20% of the class made a claim, the potential benefit of the settlement is greater than $14 million. Furthermore, in order to obtain Kroll's services for the Settlement, the Defendant was required to pay for a minimum of 45,000 subscriptions, and accordingly, the Settlement provided at least $2,115,000.00 in potential benefits to the Settlement Class. Marquez Decl. at ¶10. When weighed against the inherent risks and uncertainties of continued, protracted litigation, including potential defeat at certification, on the merits, or on appeal, the Settlement provides for an outstanding, guaranteed recovery for the Settlement Class.

The Settlement brings substantial relief to the 1,565,338 patients of Defendant who were affected by the data breach, and did not come without extensive effort, skill, delay and risk. The case presented many challenges and uncertainties, including a vigorous and skilled defense by Defendant and opposing counsel. Defendant brought a successful Motion to Dismiss for lack of standing under Article III which this Court granted on March 19, 2021. *See* Dkt. No. 27. At this time, the Parties had already agreed to settle this case. *See* Marquez Decl. at ¶9. Notably, this Court did not address issues as to the traceability or the redressability of Plaintiffs' injuries in their order granting the Motion to Dismiss. *See* Dkt No. 27 at p.8. Such damages issues continue to be extant, as to date neither Plaintiffs nor Defendant have obtained evidence indicating that class members' Personal Identifying Information ("PII") or Private Health Information ("PHI") has actually been misused by malicious third-party actors following the data breach. Accordingly, there is no guarantee that Plaintiff would be able to recover any amount of damages at trial. Despite this precarious backdrop, Class Counsel undertook the risk of litigating this case, in full belief that Plaintiffs' claims were meritorious and worth prosecuting.

---

Chen in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Chen Decl.") submitted herewith.

As compensation for their considerable efforts on behalf of the Settlement Class, Class Counsel, who prosecuted this case on a wholly contingent fee basis, seek an award for $810,000 in attorney's fees and costs. Class Counsel's fees and costs are documented and were reasonably incurred in litigating this case and warranted under applicable law. Class Counsel's application is fully supported by Plaintiffs and is therefore presumed reasonable and is consistent with recent fee rewards in comparable settlements. In light of the risks undertaken, the work performed, the result obtained, and the favorable response of the Settlement Class to date, Class Counsel respectfully submit that the requested fees and expenses are fair and reasonable and should be approved by the Court.

## II.  THE REQUESTED FEE AWARD IS FAIR AND REASONABLE

### A. Class Counsel's Fees Should be Calculated Under the Percentage of Fund Method

Courts have long recognized that where, as here, a common benefit is conferred onto a Class, Plaintiffs' counsel are entitled to attorneys' fees. *See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire*, 56 F.3d 295, 311 (1st Cir. 1995) (holding that class counsel "labored as representative counsel conferred a common benefit, and must be compensated accordingly."). In such cases, the utilization of the "percentage-of-fund method…is the prevailing praxis." *Id.* at 307. In particular, the First Circuit has noted that the percentage-of-funds method is the "prevailing practice" and provides "distinct advantages over the lodestar approach." *See Nilsen v. York County*, 400 F.Supp.2d 266, 270-71 (D. Me 2005); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 78 (D. Mass. 2005) (finding that, in complex litigation and common fund cases, the percentage of fund approach is "often less burdensome to administer" and its use "enhances efficiency.") (internal citations omitted). Further, the percentage-of-fund method is commonly used to calculate attorneys' fees in contingency fee cases such as this one. *See* 5 Newberg on Class Actions §15:62 (5th ed. 2018).

In particular, Courts have found that the percentage of benefit method is the proper method for awarding attorney's fees and costs in data breach settlements which, like this one,

provide class members with claims-made reimbursement and credit-monitoring services. *See, e.g., In re Equifax Inc. Customer Data Security Breach Litigation*, 999 F.3d 1247, 1281 (11th Cir. 2021) (finding that the district court "properly applied the percentage method in this common fund settlement case.")

**B. Class Counsel's Fees are Reasonable Under the Percentage of Fund Method**

In selecting an appropriate percentage award, both the Supreme Court and the First Circuit have recognized that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *Thirteen Appeals*, 56 F.3d at 307. Courts in this Circuit frequently award attorneys' of approximately thirty percent of the settlement fund in class actions. *See, e.g., Thirteen Appeals*, 56 F.3d at 307 (approving fee award of approximately 31%); *Hoff v. Popular Inc.*, No. 3:09-CV-01428-GAG, 2011 WL 13209610 at *2 (D.P.R., Nov. 2, 2011) (awarding 27% of the settlement); *Relafen,* 231 F.R.D. at 82 (awarding 33.33% of the settlement); *Deckler v. Ionics, Inc., et al.*, No. 03-CV-10393-WGY, slip op. (D. Mass. Apr. 4, 2005)(awarding 30% of the settlement); *In re Segue Software, Inc. Sec. Litig.*, No. 99-10891-RGS, slip op. (D. Mass. July 31, 2001) (awarding 33% of the settlement); *Wilensky, et al. v. Digital Equip. Co., et al.*, No. 94-10752-JLT (D. Mass. July 11, 2001)(awarding 33.33% of the settlement).

Here, Plaintiffs seek an award of $810,000 under the percentage of fund method, which will account for approximately 5.85% of the entire $14 million value of the Settlement Fund. Plaintiffs' request is reasonable, their requested percentage is well within the range typically granted in this Circuit. Further, Plaintiffs' request for a percentage of the total value of the settlement fund is reasonable, as Courts in this Circuit have held that percentage of fund requests should be awarded based on a percentage of the total value of the benefits presented to the class. *See, e.g.*, *Simonet v. Glaxosmithkline*, No. CIV.06-1230 GAG/CVR, 2009 WL 2912482 at *2 (D.P.R., Sept. 4, 2009) ("There is ample case law which supports the idea of allowing attorney's fees based on a percentage of the total amount of the settlement fund."); *In re Volkswagen and Audi Warranty Extension Litigation*, 784 F.Supp.2d 35, (D. Mass 2011) ("the measurement should

not be what benefits are claimed by the class but rather what benefits are made available by counsel to be claimed"), *vacated and remanded on other grounds*, 692 F.3d 4 (1st Cir. 2012); *Trombley v. Bank of American Corporation*, No. 08-CV-456-JD, 2012 WL 13186976 at *2 (D.R.I., Mar. 13, 2012) ("to determine whether the percentage is reasonable, courts consider a variety of factors, including the value of the settlement to the claimants.").

Furthermore, Plaintiffs' request is also reasonable upon a consideration of the benefits already paid out by the Settlement. In order to obtain Kroll's services for the Settlement, the Defendant has already purchased 45,000 subscriptions, and thus provided at least $2,115,000.00 in value to the Settlement Class. Marquez Decl. at ¶10. Even when just taking that $2,115,000.00 figure into account, Plaintiffs' requested fee award is for a mere 38.77% of the value already paid to the Settlement Class, and still remains in the comparable range typically granted in this Circuit.

Finally, Plaintiffs' request is also reasonable because it falls well within the range of the fees awarded by other Courts in comparable data breach class actions. *See, e.g., In re Home Depot, Inc., Customer Data Security Breach Litigation*, No. 1:14-MD-02583-TWT, 2016 WL 11299474 at *2 (N.D. Ga., Aug. 23, 2016) (finding a fee award of 28% of the settlement as "reasonable as a percentage of the benefit conferred on the Settlement Class.").

C. **The Relevant Factors Support Class Counsels' Fee Request**

The First Circuit has enumerated a variety of factors to consider in determining the reasonableness of attorney's fees. Among these factors include, *inter alia*: (1) the result obtained, (2) the time and labor devoted to the case by counsel, (3) the skill, experience, reputation and ability of the attorneys involved, (4) the contingent nature of the fee and risk of non-payment (5) (6) a consideration of comparable settlements and (7) the reaction of the class members. *See, e.g., Relafen,* 231 F.R.D. at 84; *Bezdek v. Vibram USA Inc.*, 79 F.Supp.3d 324, 343-44 (D. Mass. 2015), aff'd 809 F.3d 78 (1st Cir. 2015); *Zurich v. American Ins. V. Lord Elec. Co. of Puerto Rico*, No. CIV.09-1111 SEC, 2014 WL 710116 at n.1 (D.P.R., Feb. 25, 2014). The fees sought by Class Counsel here are reasonable and appropriate upon an analysis of these above factors.

    *1. The Result Obtained*

One of the primary factors Court look to in deciding the reasonableness of the fee request are the results obtained. *See In re Puerto Rican Cabotage Antitrust Litigation,* 815 F.Supp.2d 448, 458 (D.P.R. 2011) ("Analyzing the net dollars and cents results achieved by counsel for their clients is often the most influential factor in assessing the reasonableness of any attorney's fee award.")(*citing Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (stating that the "most critical factor is the degree of success obtained.").

Here, the result obtained by Class Counsel supports the reasonableness of the fee request. The Settlement makes available the following substantial benefits to Settlement Class Members:

- <u>Kroll Web Watcher Services</u>: Class members are eligible to receive up to one year of Kroll's Web Watcher Services. Dkt. No. 35-1 at ¶3.1

- <u>Reimbursement of Out-of-Pocket Costs for Approved Claims</u>: Class Members who submit valid claims with reasonable documentation will be eligible for a reimbursement of out-of-pocket costs or expenses actually incurred as a result of the data breach, up to a maximum of $2,500 for each claim. Dkt. No. 35-1 at ¶3.2.1

- <u>California Confidentiality of Medical Information Act Additional Payment</u>: All Settlement Class Members who, as of January 1, 2019, resided in California and who received notice from Inmediata that their information may have been accessed in the Security Incident may submit Claims for additional compensation of up to Fifty Dollars and No Cents ($50.00)("California Settlement Payments") under the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code §56 *et seq*. Dkt. No. 35-1 at ¶3.3.1

Each of these benefits are specifically tailored to prevent further and potential damages to Settlement Class Members resulting from Defendant's data breach, and to provide some restitution to Settlement Class Members for damages that have already occurred. Considering the extensive difficulties that Plaintiffs and Class Counsel would have faced prosecuting this action going forward, particularly in proving their damages, this Settlement presents a tremendous recovery for Settlement Class Members and is an excellent result. Marquez Decl. at ¶3. The Settlement

bestows upon the Settlement Class an estimated total benefit of above $14 million. In comparison, Class Counsel's requested fee represents only 5.71% of that total estimated value. Accordingly, this factor favors heavily favors the reasonability of Class Counsel's fee request.

### 2. *The Time and Labor Devoted to the Case by Class Counsel*

Generally, Courts will find the hours an attorney spends on a case reasonable if they were "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client." *Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983). In considering the above, a Court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

This settlement is the product of approximately two years of complex and active litigation by Class Counsel and was entered into by Plaintiffs and Class Counsel with full knowledge of the facts and circumstances underlying Plaintiffs' claims, and the strengths and weaknesses of those claims.

The settlement was only reached after Class Counsel conducted an extensive factual investigation and legal analysis. Marquez Decl. at ¶¶3, 8. Class Counsels' investigation included, *inter alia*, the review and analysis of various news articles, Inmediata's press releases and website disclosures, Inmediata's notice of data breach, review and analysis of Inmediata's initial disclosure statements and documents produced through informal discovery, review and analysis of applicable statutes, regulations and industry standards governing Inmediata's protective duties with regards to customer and patient PII/PHI, consulting with experts in cybersecurity and data privacy technology, review and analysis of the law regarding Plaintiffs' claims—including novel questions of law, Inmediata's defenses thereto, class certification issues, damages issues, and preparing comprehensive briefs in opposition to Defendant's motion to dismiss, among other briefs. *Id*.

Class Counsel were required to spend, and have expended a significant amount of time investigating, litigating and successfully settling these claims to achieve an excellent result on behalf of the Class. To date, Class Counsel have collectively spent approximately 1,011.1 hours

litigating this case. *See* Marquez Decl. at ¶17. In the event that the Court grants final settlement approval, Class Counsel will need to spend additional time monitoring administration of the settlement after final approval. *Id.*

Class Counsel assessed the length of time that would likely be necessary to prosecute this action through trial, post-trial motions, and likely appeals, taking into consideration the significant uncertainties in predicting the outcome of this action and the delay in recovery which would likely occur, prior to conducting the mediation which resulted in the settlement. All settlement negotiations were conducted at arm's-length and were adversarial and non-collusive. This settlement is the product of two years of complex, active litigation conducted by Class Counsel, and as such this factor favors the reasonableness of their fee request.

### 3. *The Skill, Experience, Reputation and Ability of Class Counsel*

Courts also consider the skill, experience, reputation and ability of the counsel in evaluating a fee request. "It is well accepted that a case requiring specialized abilities may, and often does, warrant higher attorney rates." *Arkansas Teacher Retirement Sys. v. State Street Bank and Trust Co.*, No. 11-CV-10230-MLW, 2018 WL 11026335 at *67 (D. Mass., June 28, 2018)(citing *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983). In particular, the prosecution of complex class actions "require unique legal skills and abilities as well as substantial resources." *Id.*

Class Counsel in this action unquestionably hold a tremendous amount of skill, experience, reputation and ability. Wilshire Law Firm, PLC was selected by Best Lawyers and U.S. News & World Report as one of the nation's Best Law Firms in 2021. Marquez Decl. at ¶4. Class Counsel at Wilshire Law Firm have extensive experience in successfully litigating data breach, consumer and employment class actions. *Id.* at ¶¶5-7. Indiano & Williams, P.S.C. is recognized as one of the top law firms in Puerto Rico. Indiano Decl. at ¶3. Class Counsel at Indiano & Williams have served as both local and lead counsel for complex class actions litigated in this District. *Id.* at ¶4. Class Counsel have rendered efficient and effective services in this action, reflecting a wealth of knowledge and expertise.

Further, the standing of opposing counsel also reflects upon the skill, experience, reputation and ability of Class Counsel.  *See, e.g., Lazy Oil v. Witco Corp.*, 95 F. Supp. 2d 290, 322 (W.D. Pa. 1997), *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), aff'd 789 F.2d 35 (2d Cir. 1986).  Here, Defendant is represented by Lewis Brisbois Bisgaard & Smith, a nationally recognized and highly skilled law firm.  The ability and determination of opposing counsel further enhance the significance of the results Class Counsel have achieved.

### 4. *The Contingent Nature of the Fee and Risk of Non-Payment*

Courts have consistently recognized that another important factor in evaluating an application for fees is the contingent nature of counsel's engagement and the risks of non-payment for their work performed.  See, e.g., *Relafen* 231 F.R.D. at 81; *Bezdek*, 79 F.Supp.3d at 344-45; *Hill v. State Street Corp.*, No. CIV.A.09-12146-GAO, 2015 WL 127728 at *9 (D. Mass., Jan. 8, 2015).

Class Counsel undertook to present Plaintiffs and the Class in this litigation on a contingent basis, with the expectation that they would have to devote many hours of hard work involving difficult and novel issues of fact and law, without any assurance of recompense for their labor or even reimbursement for their out-of-pocket expenses.  Marquez Decl. at ¶¶11-12.  Class Counsel assumed the difficult tasks of analyzing complex documents, performing necessary legal research, preparing briefs, consulting experts and conducting vigorous negotiations to produce the result before the Court.  *Id*..  The risk undertaken by Class Counsel was significant, as the inherent risks of contingent fee arrangements are very real and manifest regularly.  Indeed, Class Counsel have undertaken a number of class action cases in the past that ultimately resulted in thousands of attorney hours being expended without recovery.  *Id*. at ¶13.  Further, in choosing to prosecute this action, Class Counsel were precluded from focusing on, or taking on, other cases which could have resulted in a larger, less risky, monetary gain.  *Id*. at ¶12.  Accordingly, this factor favors the reasonability of Class Counsel's fee request.

### 5. *The Settlement Compares Favorably with Those Approved in Other Data Breach Cases*

The Settlement compares favorably with reported data breach settlements approved both in this Circuit and elsewhere. As in this case, the focus and goal of many court-approved data breach settlements is (1) to provide consumers with free credit monitoring, insurance protection, and support services so that identity theft or other unauthorized use of their data is prevented or mitigated where it cannot be prevented; and (2) to compensate victims of identity or financial theft resulting from a data breach for losses incurred.

For example, the *TJX Companies Retail Security Breach* settlement, approved in the First Circuit in 2008 by Judge William G. Young, provides substantially similar benefits to its class members in the form of three years of credit monitoring to those that enroll, as well as for reimbursement claimable by class members for harm incurred as a result of the data breach. *In re TJX Companies Retail Sec. Breach Litigation*, 594 F.Supp. 395, 398 (D. Mass. 2008). Other substantially similar data breach settlement structures were also approved for *In re Anthem, Inc., Data Breach Litig.*, 327 F.R.D. 299, 333-34 (N.D. Cal. 2018, approved 2018); *Pagoaga v. Academy of Art University*, No. CGC 16-551952 (San Francisco Super. Ct., approved 2018); *In re Target Corp. Data Security Breach Litig.*, MDL No. 14-2522 (PAM/JJK)(D. Minn., approved 2015; affirmed by 8th Cir. 2018); *In re Home Depot Inc., Customer Data Security Breach Litig.*, 1:14-md-0283-TWT (N.D. Ga., approved 2016); and *Bray v. Gamestop Corp.*, No. 17-cv-01365 (Dist. Del., approved 2018).

6. *The Positive Reaction of the Settlement Class*

Courts have found that the near absence of objections from a settlement class to a request for attorney's fees supports the fairness and reasonableness of the request. *See, e.g., Rivero Souss v. Banco Santander S.A.,* No. CV 09-2305 (FAB), 2011 WL 13350165 at *13 (D.P.R. June 9, 2011) (approving class counsel's request for attorney's fees reasonable where "only one Class member (out of more than 2000)" objected to the settlement); *Relafen,* 231 F.R.D. at 86 (approving class counsel's request for attorney's fees despite four objections); *In re Prograf Antitrust Litigation*, No. 1:11-MD-02242-RWZ, 2015 WL 13908415 at *5 (D. Mass., May 20, 2015)

(finding class counsel's request for attorney's fees reasonable in part because there were no objections by class members).

In administrating the settlement, Class Counsel directed the settlement administrator, ILYM, Inc., to email Court-approved notices of the settlement, which included Class Counsel's intention to file this Motion for attorney's fees, to the 1,565,338 Settlement Class Members. *See* Dkt. No. 35 at p.19; *see also* Dkt. No. 35-1 at Ex. A, Ex. B, Ex. C. Notice was also publicized through a 60-day banner ad campaign with ad placement through Google, Facebook, Instagram, Youtube and other websites, as well as on the Settlement Website. *Id.* These notices stated that the Settlement would include a request for attorney's fees and costs. *Id.* To this date, not a single objection has been received by Class Counsel.[2] Should this continue to remain true upon the passing of the deadline to receive objections, this factor weighs heavily in favor as to the reasonability of Class Counsel's fee request.

### D. The Reasonability of the Fee Request is Also Demonstrable Through a Lodestar Cross-Check

While the First Circuit does not require a court to cross check a percentage of fund request against a lodestar in determining of the reasonableness of a requested fee, a lodestar cross-check does provide a useful perspective on the reasonableness of a given percentage award. *See Thirteen Appeals,* 56 F.3d at 307; *Relafen,* 231 F.R.D. at 81; Manual for Complex Litigation §14.122 ("The lodestar is…useful as a cross-check on the percentage method.")

Under the lodestar method, the court determines "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001) (citing *Hensley,* 461 U.S. at 433). "In implementing this approach, the judge calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)."

---

[2] The deadline for receipt of objections is April 19, 2022. If any objections are received prior to that deadline, Class Counsel will promptly notify the Court.

*Id.* This calculation may also be further subject to a multiplier in some cases to reflect the contingent nature of any fee, the delay in payment, the quality of representation, and the results obtained. *See TJX Companies,* 584 F.Supp.2d at 398 (approving a lodestar fee enhancement in a data breach class action "through the application of a multiplier to account for the contingent nature of the action or other factors."); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 951 (1st Cir. 1984); *In re Cabletron Systems, Inc. Sec. Litig.*, 239 F.R.D. 30, 37 (D.N.H. 2006) ("The hourly rates, which presumably reflect the market, and the fee amount may be adjusted by applying a multiplier reflecting the difficulty of the case, risk, the length of time he case has taken to settle, and other similar considerations.").

Class Counsel have collectively expended a total in excess of 1011.1 hours prosecuting this action, resulting in a lodestar of $698,360.00. Marquez Decl. at ¶17. This lodestar requires only a reasonable enhancement (multiplier) of approximately 1.17x to equate with the fee requested by Plaintiffs' counsel. This multiplier is comparable to or significantly less than the multipliers recognized by courts as reasonable for compensating plaintiffs' counsel for the contingency risk they have taken on to represent a class. *See, e.g., In re Veritas Software Corp. Sec. Litig.,* No. C-03-0283 MMC, 2005 WL 3096079, at *19 (N.D. Cal. Nov. 15, 2005) (applying a 4.0 multiplier where "the case ha[d] not progressed beyond motions to dismiss," and "no formal discovery ha[d] been taken to date."); *Hoff*, 2011 WL 13209610 at *2 (finding reasonable a percentage of fund reward equivalent to a 3.13 lodestar multiplier); *Krausz v. ING Investments, LLC,* No. 06-12145-RGS, 2008 WL 217102, at *1 (D. Mass. Jan. 23, 2008) (finding a multiplier of 2 as reasonable); *In re Tyco Intern., Ltd. Multidistrict Litig.*, 535 F.Supp.3d 249, 271 (D.N.H. 2007) (finding a multiplier of 2.697 was appropriate, and even noting that it was relatively low); *In re CVS Corp. Sec. Litig.*, No. 01-11464-JLT, slip op. at 7 (D. Mass. Sept. 7, 2005) (awarding attorneys' fees with a 3.27 multiplier).

The hours spent prosecuting this action, as well as Class Counsel's hourly rate, are both reasonable. Courts look to a variety of factors when determining the appropriate rate for a particular attorney's time, including the rate that particular attorney "actually charges to clients in

the ordinary course of [her] practice" and "data evidencing the prevailing market rate for counsel of comparable skill." *Perez-Sosa v. Garland*, 22 F.4th 312, 325 (1st Cir. 2022)(citing *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 8 (1st Cir. 2011)). Class Counsel have provided declarations to support their hourly rates, including providing examples of comparable, previously approved hourly rates. *See* Marquez Decl. at ¶7; Indiano Decl. at ¶4; Coelho Decl. at ¶2; Chen Decl. at ¶2. Class Counsel's hourly rates are reasonable in light of their significant experience, expertise, and skill. Class Counsel are experienced litigators who specialize in data breach, consumer and wage and hour class action practice. Marquez Decl. at ¶¶4,5. Given the skill and experience of Class Counsel in this case, and the excellent result achieved for the Class, Class Counsel's hours and hourly rates are reasonable.

## III. CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR REASONABLY INCURRED LITIGATION EXPENSES

Class Counsel have incurred litigation expenses of approximately $4354.13. in prosecuting this action. Marquez Decl. at ¶18; Indiano Decl. at ¶10. These expenses were reasonable and necessary to the representation of the Class. *See In re Nineteen Appeals Arising Out of the San Juan Dupoint Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir. 1992). Breakdowns and an accounting of the aggregate expenses incurred by each of Class Counsel's firms by category are attached as exhibits to the Declarations of Justin F. Marquez and David Indiano, as submitted herewith. *See* Marquez Decl. at Exh. 2; Indiano Decl. at Exh. 2. Class Counsel anticipate the requirement to incur substantial additional expenses in this action in the near future, including travel costs to Puerto Rico to attend the Final Approval Hearing scheduled on April 21, 2022. Accordingly, Plaintiffs' request for an award of costs is reasonable.

As noted above, the Summary Notice, Publication Notice and Long Form Notice sent to and made available for the Settlement Class Members informed them that the Settlement would provide for a request for attorney's fees and costs. No Settlement Class Member has raised an objection to such a request. Accordingly, Class Counsel respectfully submit that the Court should award the expenses requested.

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

## IV. CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Plaintiffs' Motion for Final Approval of Class Action Settlement, to be filed concurrently herewith or shortly hereafter, Class Counsel request that the Court award attorney's fees in the amount of $810,000 in attorney's fees and costs.

Dated: April 8, 2022                                          Respectfully Submitted,

/s/ *David C. Indiano*
David C. Indiano USDC Bar No. 200601
**INDIANO & WILLIAMS, P.S.C.**

/s/ *Thiago M. Coelho*
Thiago M. Coelho (*PRO HAC VICE*)
Justin F. Marquez (*PRO HAC VICE*)
Robert Dart (*PRO HAC VICE*)
**WILSHIRE LAW FIRM, PLC**

*Attorneys for Plaintiffs and the proposed class*