# UNITED STATES DISTRICT COURT

## DISTRICT OF PUERTO RICO

| | |
|---|---|
| JESSIE SERRANO, on her own behalf and on behalf of JOZEF MANGUAL SERRANO, a minor, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>INMEDIATA CORP.. a Delaware corporation, INMEDIATA HEALTH GROUP CORP., a Puerto Rico corporation, and DOES 1 to 10, inclusive,<br><br>                    Defendants. | Case No. 3:19-cv-01811-JAG<br><br>*Honorable Judge Jay A. Garcia-Gregory*<br><br>**JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Complaint Filed:        August 28, 2019 |

**TO THE HONORABLE COURT:**

**NOW APPEAR** Plaintiffs, **JESSIE SERRANO**, on her own behalf and on behalf of **JOZEF MANGUAL SERRANO**, a minor, individually and on behalf of all others similarly situated (hereinafter "Plaintiffs") by and through their undersigned counsel, and respectfully state, allege, and request as follows:

## I.        PRELIMINARY STATEMENT

Plaintiffs seek final approval of a proposed settlement that provided as much as $14,000,000 in potential benefits in this Action (the "Settlement") against Defendants Inmediata Corp. and Inmediata Health Group Corp. (collectively "Inmediata" or "Defendant") for the benefit of the Settlement Class (the "Class").  Plaintiffs believe that the Settlement represents an excellent result.

The Settlement constitutes a substantial benefit for the members of the Class that is fair, reasonable and adequate.  The Settlement provides for the reimbursement of approved claims for Settlement Class Members' out-of-pocket costs incurred as a result of the data breach, as well as

making available a one-year subscription to Kroll's Web Watcher identity theft service to all Class Members, which carries a retail value of approximately $47 per person.  Accordingly, Plaintiffs estimate that the total value of the Settlement to the Class Members is approximately $14 million. *See Simonet v. Glaxosmithkline*, No. CIV. 06-1230 GAG/CVR, 2009 WL 2912482 at *2 (D.P.R. Sept 4, 2009); *In re Volkswagen and Audi Warranty Extension Litigation*, 784 F.Supp.2d 35, (D. Mass 2011) (finding that "the measurement should not be what benefits are claimed by the class but rather what benefits are made available by counsel to be claimed"), *vacated and remanded on other grounds*, 692 F.3d 4 (1st Cir. 2012). In order to obtain Kroll's services for the Settlement, the Defendant was required to purchase a minimum of 45,000 subscriptions, and accordingly, the Settlement provided at least $2,115,000.00 in benefits to the Settlement Class.  Declaration of Justin F. Marquez ("Marquez Decl.") at ¶20.  When weighed against the inherent risks and uncertainties of continued, protracted litigation, including potential defeat at certification, on the merits, or on appeal, the Settlement is an excellent result that provides for a guaranteed recovery for the Settlement Class.  Finally, the Settlement Class has had an overwhelmingly positive reception to the Settlement, as to date, Plaintiffs have received no objections and only three opt-out requests to the Settlement.

Plaintiffs and Class Counsel have concluded that it is in the best interest of Plaintiffs and the Class to settle this Action on the terms described herein and, accordingly, respectfully request the Court grant final approval of this Settlement.  While Plaintiffs and Class Counsel believe that their causes of action are meritorious, neither Plaintiffs nor Defendants have discovered evidence to suggest that the PII and PHI breached in this Action were actually viewed, copied or saved by any unauthorized person, nor have they discovered evidence to suggest that the breached PII and PHI have been utilized in actual or attempted misuse.  In addition, the proposed Settlement Class meets all of the elements of Federal Rules of Civil Procedure 23(a) and (b)(3), and therefore the Court should grant final certification of the Settlement Class.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This Settlement represents the culmination of over two years of litigation concerning Defendant's data breach which impacted the Personally Identifying Information ("PII") and Private Health Information ("PHI") of up to 1,565,338 of its' patients.  Plaintiffs filed their Complaint against Defendants on August 28, 2019, seeking injunctive relief, damages and attorneys' fees and expenses.  *See* Dkt No. 01.  On October 28, 2019, Defendant moved to dismiss Plaintiffs' Complaint for lack of standing.

On July 31, 2020, the Parties came together at the negotiating table, and conducted a hard-fought, arms-length mediation with the Hon. Daniel Wathen (Ret.).  Marquez Decl. at ¶14.  As a result of this mediation, the Parties came to an agreement to settle this action, and began negotiating the specifics of the Settlement, which was finalized and fully executed on March 2, 2021.  *See* Dkt. No. 35-1 at p. 33.

On March 19, 2021, this Court granted Defendant's Motion to Dismiss for failure to plead an injury-in-fact for purposes of Article III standing.  *See* Dkt. No. 27.  On April 27, 2021, Plaintiffs filed their Amended Complaint, which cured that standing defect.  *See* Dkt No. 33.  Following this, Plaintiffs filed a Notice of Settlement 2021 (Dkt No. 34), as well as their Motion for Preliminary Approval (Dkt. No. 35), on May 11, 2021.  This Court granted preliminary approval on July 23, 2021, upon which Plaintiffs began administration of the settlement process.

### III.   KEY TERMS OF THE PROPOSED SETTLEMENT

The key terms under the Settlement Agreement include:

1. "Settlement Class":  The Settlement Class will consist of "All persons in the United States whose Personal Information was potentially compromised as a result of the Security Incident discovered by Inmediata Corp. and/or Inmediata Health Group Corp. in January 2019."  Excluded from the Settlement Class are: "(1) the Judge presiding over the Action, and members of his family; (2) Inmediata, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former

officers and directors; (3) Persons who properly execute and submit a request for exclusion prior to the expiration of the Opt-Out period; (4) Persons who, as of the date the Court enters an Order granting Preliminary Approval of the settlement, have brought on their own behalf suit filed in their own name (either in *pro per* or through counsel) and have pending any lawsuits, arbitrations or administrative claims against Defendant; and (5) the successors or assigns of any such excluded Persons." Dkt. No. 35-1 at ¶1.36.

2. <u>$1,125,000.00 Fund</u>:  This Settlement provides for a $1,125,000.00 million dollar fund, which will be used to (1) pay all Administration Expenses, (2) pay the cost of Kroll's Web Watcher Services for the Class, (3) reimburse Class Members for Out-of-Pocket losses resulting from the data breach, (4) pay incentive awards up to $2,000 to Plaintiffs as approved by the Court, and (5) pay attorney's fees and costs for Class Counsel as approved by the Court.  Dkt. No. 35-1 at ¶3.1.

3. <u>California Confidentiality of Medical Information Act Additional Payment</u>:  All Settlement Class Members who, as of January 1, 2019, resided in California and who received notice from Inmediata that their information may have been accessed in the Security Incident may submit Claims for additional compensation of up to Fifty Dollars and No Cents ($50.00) ("California Settlement Payments") under the California Confidentiality of Medica Information Act ("CMIA"), Cal. Civ. Code §56 *et seq*.  Dkt. No. 35-1 at ¶3.3.1.

4. <u>Service Awards</u>:  Class Counsel may apply to the Court for service awards to be paid from the Qualified Settlement Fund of up to Two Thousand Dollars and No Cents ($2,000.00) each to Jessie Serrano and Jozef Mangual Serrano for their time, effort, and risk in connection with the Action.  Dkt. No. 35-1 at 8.1.

5. <u>Attorney's Fees</u>:  Class Counsel may submit a request to the Court for their attorney's fees, reasonable costs, and expenses to be paid from the Qualified

Settlement Fund.  Dkt. No. 35-1 at ¶8.2.[1]

6. <u>Release</u>: Upon the Effective Date, each Settlement Class Member, including the Representative Plaintiffs, shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against all Released Persons, as defined in ¶¶1.30-1.31.  Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including the Representative Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, assisting, joining in, or participating in any other suit alleging claims within the scope of the Released Claims, or participating in the recovery of any action in this or any other forum (other than participation in the settlement as provided herein) in which any Released Claim(s) is/are asserted. Dkt. No. 35-1 at ¶10.1.

## IV.   THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT

### A. Standard for Judicial Approval of Class Action Settlements Under Federal Rules of Civil Procedure 23(e)

It is well established that courts favor the settlement of lawsuits over continued litigation. *See, e.g., Durrett v. Hous. Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *see also Hotel Holiday Inn de Isla Verde v. N.L.R.B.,* 723 F.2d 169, 173 n.1 (1st Cir. 1983) (citing the principle that "settlement agreements are highly favored in the law and will  be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits").  In particular, Courts especially welcome settlement in complex class actions. *See Officers for Just. v. Civ. Serv. Comm'n of City & City of San Francisco*, 688 F.2d 615.625 (9th Cir. 1982).

---

[1] On April _, 2022, Plaintiffs filed a Motion for Attorney's Fees and Costs, requesting an award of $800,000.00 in fees and $10,000 in expenses. *See* Dkt. No. 48.

Before granting final approval of a proposed class action settlement, the Court must find that the settlement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e); *Voss v. Patrick*, 592 F.3d 242, 251 (1st Cir. 2010).  Courts "enjoy great discretion to 'balance [a settlement's] benefits and costs' and apply this general standard." *Id.* (citation omitted).  "[T]he ultimate decision by the judge [in approving a settlement] involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009).

Among the factors traditionally considered in evaluating the fairness of a class action settlement are the following: (i) whether the settlement negotiations were at arm's length; (ii) the stage of the litigation and the amount of discovery completed; (iii) the amount of the settlement compared to the amount at issue in the case; (iv) plaintiff's likelihood of succeeding on the merits and recovering damages on the claims; (v) class counsel's recommendations; and (vi) the nature and merit of any objections. *See, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822-23 (D. Mass. 1987).  In this instant Action, an examination of the foregoing factors demonstrates that the proposed Settlement is indeed fair, reasonable and adequate to the Settlement Class, and thus should be approved by the Court.

**B.  The Parties' Negotiations Were Adversarial and at Arm's Length**

The "involvement of a neutral or court-affiliated mediator or facilitator in [the settlement] negotiations" tends to indicate that settlement negotiations were conducted at arms-length and resulted in a fair, reasonable and adequate recovery for class members.  Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment.

On July 31, 2020, Plaintiffs and Defendant, through their respective counsel engaged in an adversarial, non-collusive and at-arm's-length mediation with the Hon. Daniel Wathen (Ret.).  Marquez Decl. at ¶14.  Each of the Parties went into the mediation willing to explore the potential

settlement of their dispute, but each side was also prepared to litigate their or its position through trial and appeal if a settlement could not be reached.  *Id*.  Throughout the negotiations, the Parties considered issues including, but not limited to, the following: (1) certification of a nationwide settlement class; (2) monetary remuneration for the Class Members; and (3) credit monitoring services to be purchased for the Class Members.  *Id*.  The resulting Settlement is the product of hours of such arms-length negotiations between the Parties.  Accordingly, these factors weigh in favor of approval of the Settlement.

### C. Plaintiff's Pretrial Research and Analysis, along with Informal Discovery Exchanged by the Parties, Support Final Approval of the Settlement

The reasonableness of a class action settlement is presumed where "the parties negotiated at arm's length and conducted sufficient discovery."  *Robinson v. Nat'l Student Clearinghouse,* 14 F.4th 56, 59 (1st Cir. 2021).  However, "sufficient discovery" does not require that formal discovery between the parties has occurred.  *Id.*  (finding that the parties had conducted sufficient discovery where, as here, defendant provided plaintiffs with disclosures including the number of potential class members prior to meditation).  Indeed, a great deal of formal discovery is not a "necessary ticket to the bargaining table."  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981).  *See also Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004) ("[t]he overriding theme of our caselaw is that formal discovery is not necessary as long as (1) the interests of the class are not prejudiced by the settlement negotiations and (2) there are substantial factual bases on which to premise settlement.")

At the time of the Settlement, both Plaintiffs and Defendants were in a good position to understand the strengths and weaknesses of their respective positions.  Prior to Settlement, this case was thoroughly investigated, researched, and analyzed by both Parties.  Plaintiffs thoroughly researched and investigated their claims in preparation to the filing of both their initial Complaint and when briefing Defendants' motion to dismiss.  Marquez Decl. at ¶13.  Further, Plaintiffs were able to negotiate an informal production of documents from Defendant prior to the Parties' meditation, which included, *inter alia*, documents evidencing the total number of individuals

whose PII and PHI were implicated by the data breach.  *Id.* at ¶15.  Accordingly, Plaintiffs were able to conduct sufficient discovery in this action prior to reaching a settlement of their claims and had substantial factual basis upon which to predicate their position going into the settlement negotiations.

### D.  The Settlement Represents an Excellent Recovery for the Settlement Class

The relief offered in a settlement is assessed as a whole "complete package" for overall fairness.  *Nat'l Rural Telecomunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (*quoting Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Simonet v. Glaxosmithkline*, No. CIV. 06-1230 GAG/CVR, 2009 WL 2912482 at *2 (D.P.R. Sept 4, 2009); *In re Volkswagen and Audi Warranty Extension Litigation*, 784 F.Supp.2d 35, (D. Mass 2011) (finding that "the measurement should not be what benefits are claimed by the class but rather what benefits are made available by counsel to be claimed"), *vacated and remanded on other grounds*, 692 F.3d 4 (1st Cir. 2012).  Indeed, it is "well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."  *Id.* (*citing Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242); *see also Bezdek v. Vibram USA Inc.*, 79 F.Supp.3d 324, 342 (D. Mass.), aff'd, 809 F.3d 78 (1st Cir. 2015) (finding fair, reasonable and adequate a settlement which provided class members with a recovery "notably less than the theoretical maximum potential relief available at trial").

Here, the Settlement provides for over $14 million in potential benefits to the Settlement Class, which includes out-of-pocket reimbursements for Class Members for costs incurred due to the data breach, and a one-year subscription for each Class Member to Kroll's Web Watcher identity theft service, which carries a retail value of approximately $47 per person.  *See* Dkt. No. 35-1 at ¶3.1.  Defendant was required to purchase a minimum of 45,000 subscriptions to Kroll's services, and accordingly, the Settlement's potential benefits ranged from  $2,115,000.00 to over $14 million value to the Settlement Class.  Marquez Decl. at ¶20.

In light of the risks, costs, and delays that would result from proceeding to trial and appeal

of any trial verdict, as further discussed below, the Settlement provides for (and has provided for) a reasonable recovery for the members of the Settlement Class.  While a higher reward for Class Members may be theoretically possible at trial, the nature of a Settlement is a "compromise, a yielding of the highest hopes in exchange for certainty and resolution…and the benefit to both parties is that they will avoid the outcome embodying their worst nightmares…no damages award at all."  *Bezdek*, 79 F.Supp.3d at 346.  Here, while the Settlement may provide Class Members with "something less favorable than the best outcome," it will guarantee Class members recovery "potentially on par with a likely outcome…and something more favorable than the worst outcome." *Id.*, *see also In re Celexca & Lexapro Mktg. & Sales Practices Litig.*, No. 09-civ-2067, 2014 WL 4446464 at *7 (D. Mass. Sept. 8, 2014) ("A settlement need not reimburse 100% of the estimated damages to class members in order to be fair").  Accordingly, this factor weighs in favor of approval of the Settlement.

### E.   The Risk, Expense, Complexity and Likely Duration of Further Litigation

In assessing this factor, a Court should "consider the legal obstacles to establishing liability or damages."  *Rivero Souss v. Banco Santander S.A.*, No. CV 09-2305 (FAB), 2011 WL 13350165 at *8 (D.P.R., June 9, 2011) (citing *Bussie v. Allmerica Fin. Corp.*, 50 F.Supp.2d 59, 76 (D. Mass 1999) ("the reality that the Class would encounter significant, and potentially insurmountable, obstacles to a litigated recovery underscores the reasonableness of the compromise set forth in the Settlement Agreement.")  Indeed, this factor "weighs heavily in favor of final approval" where, as here, continued litigation is assured to be "an expensive, complex and time-consuming process" and there are "serious questions of law and fact that render[ed] the ultimate outcome of [the] litigation uncertain and unpredictable." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72-73 (D. Mass. 2005); *see also Bezdek v. Vibram, USA Inc.*, 79 F.Supp.3d 324, 344-45 (D. Mass. 2015) (finding that this factor weighs in favor of settlement for the same reasons), aff'd 809 F.3d 78 (1st Cir. 2015).

Here, the risk and expense of continued litigation is apparent: absent approval of the Settlement, the Parties would be required to continue litigation, which necessarily would involve

extensive discovery, expensive expert reports, and a motion for class certification which Defendants would surely contest.  Other highly foreseeable motions would be a motion for summary judgment and potential appeals.  Such proceedings would be costly, prolong this Action for several more years, and decrease the net benefit of any damages award obtained at trial, all without providing any degree of certainty that the Class would end up with a recovery of greater or even equivalent value to the proposed Settlement.  In fact, it may even be less.  Accordingly, this factor weighs heavily in favor of approval.  *See, e.g., Relafen,* 231 F.R.D. at 72-73; *Bezdek*, 79 F.Supp. at 345 (finding that this factor weighs in favor of settlement where plaintiffs "identified meaningful concerns with class certification," and that both parties would need to "conduct further discovery, including extensive expert discovery, followed by very likely a motion for summary judgment and renewed settlement discussions.").

### F.  Plaintiffs' Likelihood of Succeeding on the Merits

In applying this factor, courts will "judge the fairness of the proposed compromise by evaluating the probable outcome of the litigation and the terms of the settlement and by weighing the remedies the class could secure from it against the probable costs and results of continued litigation."  *Simonet,* 2009 WL 2912482 at *1 (citing *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)).  "In doing so, however, the court is not to decide the merits of the case or resolve unsettled legal questions."  *Id.*  Finally, courts will find this factor in favor of a settlement where "there is an issue as to what proof, if any, can be offered by the members of the class to prove their damages," which would make "recovery by the class members particularly difficult." *Id.*

While Plaintiffs and their counsel naturally believe that there is evidence from which the Court could rule in favor of Plaintiffs' claims given further litigation, substantial hurdles for Plaintiffs to prove their damages are evident.  Neither Plaintiffs nor Defendants possess evidence which indicates that Class Members' breached data was actually obtained and used by hackers. Marquez Decl. at ¶17.  All that is known to Parties at this present moment is that the data was available for public view for a specific period of time.  Accordingly, there exists a real issue as to

whether Plaintiffs will ever be able to prove damages.   Additionally, individualized issues stemming from the differing harm experienced by the Class resulting from the data breach means that there is a significant chance that Plaintiffs will be unable to prevail on a motion for class certification.   Here, Plaintiffs' case unquestionably carries merit, but also carries inherent and substantial weaknesses.   Accordingly, this factor weighs in favor weighs in favor of final approval of the Settlement. *Bezdek*, 79 F.Supp at 345 (finding this factor favors settlement where plaintiffs "ha[d] some ,but not an entire, likelihood of success on the merits," including prospective issues with proving their damages theory at trial).

### G. Views and Experience of Plaintiffs' Counsel, and Counsel's Adequate Representation of the Class

In approving class action settlements, courts give great weight to the opinion and judgment of experienced counsel who have conducted arm's-length negotiations.   "When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight." *Hill v. State Corp.*, No. CIV.A.09-12146-GAO, 2015 WL 127728 at *7 (D. Mass., Jan. 8, 2015) (citing *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000).

Plaintiffs' Counsel has extensive experience in litigating data breach, consumer and employment class actions.   Marquez Decl. at ¶¶10-11.   Plaintiffs' counsel understood and appreciated the defenses and position of Defendants but believed the Plaintiffs would ultimately prevail in this Action.   Considering the Parties' strongly divergent views, and their awareness of the burdens of proof necessary to establish liability for the claim and the potential challenges to bringing a motion for class certification, the Parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation.   The Parties have produced a result that they believe to be in their respective best interests.   The Parties have taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation.   Marquez Decl. at ¶¶17-19.   Plaintiffs are also aware of the burdens of proof necessary to establish liability for their claims, the defenses thereto, the difficulties in establishing

damages for the Class, and the potential challenges to bringing a motion for class certification. Marquez Decl. at ¶¶17-19.  As a result, Plaintiffs' Counsel, by and through their knowledge of the case and their extensive experience litigating these types of actions, strongly believe that the Settlement is fair, reasonable and adequate for Plaintiffs and the Class.  Marquez Decl. at ¶19. Accordingly, this factor weighs heavily in favor of final approval of the Settlement.

## H. The Favorable Reaction and Lack of Objection by the Settlement Class Supports Approval

The highly favorable reaction of the members to the Settlement Class supports its approval. *See Simonet,* 2009 WL 2912482 at *9-10 (approving settlement in light of, among other things, "the overwhelming, nearly unanimous support for the settlement demonstrated by the absence of any other objections, and the small number of exclusion requests.")

Pursuant to the Preliminary Approval Order, ILYM Group, Inc., the Claims Administrator, under the direction of Plaintiffs' Counsel, caused Summary Notice to be emailed, starting from January 19, 2022, to a total of 1,565,338 Class Members.  *See* Declaration of Stephanie Molina at ¶4.  Pursuant to the Preliminary Approval Order, the Claims Administrator also caused the Publication Notice to be publicized through a 60-day banner ad campaign with ad placement through Google, Facebook, Instagram, YouTube, and other websites.  *Id.* at ¶6.  The Claims Administrator also published the Summary Notice, Publication Notice and Long Form Notice on the Settlement Website.  *Id.* at ¶5.  Each of these Notices informed Class Members of the general terms of the Settlement Agreement, advised them of their right to request exclusion from the Settlement, of their right to object at the Final Approval and Fairness hearing, and instructed them how to do so.

To date, no objections to the Settlement or Plaintiffs' Counsel's application of an award for attorneys' fees and expenses have been filed with the Court or served on Plaintiffs' Counsel.[2] Further, out of a total of 2,987 responses received, only three Class Members have submitted

---

[2] The deadline for receipt of objections is April 19, 2022.  If any objections are received prior to that deadline, Plaintiffs' Counsel will promptly notify the Court.

requests for exclusion from the Settlement.  The Settlement Class Members have overwhelmingly had a favorable reaction to the proposed Settlement.  Accordingly, this factor weighs in favor of final approval of the Settlement.

## V.    FINAL CLASS CERTIFICATION FOR PURPOSES OF THE PROPOSED SETTLEMENT IS APPROPRIATE

In the Court's Preliminary Approval Order, the Court preliminary certified the following class for settlement purposes:

"All persons in the United States whose Personal Information was potentially compromised as a result of the Security Incident discovered by Inmediata Corp. and/or Inmediata Health Group Corp. in January 2019."  Excluded from the Settlement Class are: "(1) the Judge presiding over the Action, and members of his family; (2) Inmediata, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers and directors; (3) Persons who properly execute and submit a request for exclusion prior to the expiration of the Opt-Out period; (4) Persons who, as of the date the Court enters an Order granting Preliminary Approval of the settlement, have brought on their own behalf suit filed in their own name (either in *pro per* or through counsel) and have pending any lawsuits, arbitrations or administrative claims against Defendant; and (5) the successors or assigns of any such excluded Persons."

A class may be certified for purposes of a settlement through a "rigorous analysis of the prerequisites established by Rule 23."  *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 28 (1st Cir. 2003) (citing *Gen Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L.Ed.2d 740 (1982).  In doing so, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."  *Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000) (quoting *Eisen v. Carlise & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, L.Ed.2d 732 (1974).  In other words, "when confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."  *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 128 L.Ed.2d 689 (1997).)  Nevertheless, "[w]hen a settlement class is proposed, it is incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members."  *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75,

88 (D.Mass.2005) (citing *Amchem*, supra, 521 U.S. at 620).   "This cautionary approach notwithstanding, the law favors class action settlements." *Id.* (*citing City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996).

Accordingly, District Courts enjoy broad discretion in making such class certification determinations, so long as the following criteria are met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact of law common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  All of these factors are present here, and therefore, final class certification for purposes of the Settlement is appropriate.

## A.  Numerosity

The first requirement of Rule 23(a) is that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The First Circuit has characterized the numerosity requirement as a "low threshold." *Garcia–Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Id.* (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir.2001)); *see also George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 173 (D.Mass.2012) ("[C]ourts have generally found that a class size of forty or more individuals will satisfy the numerosity requirement.").  Here, numerosity is clearly met.  According to Defendants' records, the Class is composed of 1,565,338 persons.  Thus, the potential number of plaintiffs greatly exceeds 40, and numerosity is met.

## B.  Common Questions of Fact or Law

"In assessing commonality, the court should inquire into 'the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'" *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 325 F.R.D. 529, 536 (D. Mass. 2017) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011)). "The

plaintiff must show that there is a common contention capable of class-wide resolution such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (quoting *Wal-Mart Stores*, 564 U.S. at 350).

Here, such common questions include, *inter alia*: (1) What was the level of care required of Defendants to protect the personal information of the Class Members? (2) Did Defendants fail to meet that level of care? and (3) Did Defendants' deficient data protection systems cause the data breach?

Each of these questions is a common question which can be determined on a class-wide basis by investigation into Defendants' systems, including Defendants' internal data security policies and procedures. Further, each of these common questions will most likely drive the litigation, as Defendants' deficient data security systems are central to a finding of liability here, and not any individualized issue relating to any individual plaintiff. Accordingly, Commonality is met.

### C. Typicality

"To meet the typicality prerequisite, the injuries of the named plaintiff must arise from the same events or course of conduct and be based upon the same legal theory as the injuries and claims of the class." *In re Celexa,* 325 F.R.D. at 536 (citing *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 260 (D. Mass. 2005)). "The named plaintiff is not typical of the class if his or her claim may be 'subject to unique defenses that would divert attention from the common claims.'" *Id.* (quoting *Swack*, 230 F.R.D. at 260).

Here, Plaintiffs meet the typicality requirement because they allege injuries resulting from the same data breach that affected the entire Class and allege causes of action arising from the same course of conduct—Defendants' refusal or inability to provide sufficient data protection— that applies to the entirety of the Settlement Class. There are no individual defenses which apply to Plaintiffs which do not apply to the entire Settlement Class. Indeed, all claims held by Plaintiffs are based on the same legal theory as the Settlement Class Members—that Defendants failed to adequately protect their personal information. Accordingly, typicality is met.

### D. Adequacy

"Adequacy requires that the class representative will 'fairly and adequately protect the interests of the class.'" *In re Celexa.*, 325 F.R.D. at 536–37 (quoting Fed. R. Civ. P. 23(a)(4)). "The named plaintiff must show that 1) its interests align with the class interests and 2) its counsel is qualified to litigate the claims vigorously." *Id.* (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

Here, Plaintiffs' interests in prosecuting their Class Action and obtaining the most beneficial recovery possible is fully aligned with the interests of the rest of the Class.  Plaintiffs have no conflicts relative to this case which prevent them from prosecuting it to its fullest on behalf of the Class. Plaintiffs share with the Class Members the incentive to obtain the most complete recovery possible from Defendants in compensation for the harms that they caused.

Plaintiffs' Counsel is highly experienced in data breach, consumer and employment class actions and has devoted themselves to prosecuting cases against large corporations for the benefit of large numbers of class members. Marquez Decl., ¶¶4,10.  Class Counsel has been highly successful and is highly regarded in this practice area. *Id.* Named Plaintiffs have chosen their counsel prudently.  Accordingly, Adequacy is met.

### E. Ascertainability

Although not found explicitly in Rule 23, ascertainability is an "implied requirement" and "essentially require[s] a putative class to be ascertainable with reference to objective criteria." William B. Rubenstein, Newberg on Class Actions §§ 3:1 (5th ed. 2017); *see also Matamoros v. Starbucks Corp.*, 699 F.3d 129, 139 (1st Cir. 2012) ("The presence of...an objective criterion overcomes the claim that the class is unascertainable."). Here, the class is fully ascertainable. The Class includes only individuals whose personal information was exposed due to the data breach suffered by Defendants. Defendants kept records of and have already identified each of these individuals and sent them notice of the breach. Accordingly, the Class Members can clearly be ascertained according to objective criteria.

### F. Common Questions of Fact and Law Predominate

Finally, class certification under Rule 23(b)(3) requires a determination that "questions of fact or law common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance requirement is 'far more demanding' than the commonality requirement in Rule 23(a)…but it does not require that each element of the claims is susceptible to class-wide proof." *In re Celexa,* 325 F.R.D. at 437 (citing *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015)). Instead, a plaintiff need only prove that individualized questions will not "overwhelm" the common ones. *Id.* Thus, the "need for some individualized determinations" will not defeat class certification. *Id.*

Here, common questions— including, *inter alia*, what standard of care Defendants were required to employ in protecting the data, whether Defendants met that standard of care, and whether Defendants' failures caused the breach—dominate the litigation as the central questions and predominate over individual issues because they will dictate whether the Plaintiffs have proven their causes of action on behalf of the Class Members. The only individual questions potentially required to be addressed in this case go to damages, which do not weigh negatively towards this factor, as it is blackletter law that individual questions as to damages cannot defeat predominance. *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 40 (1st Cir. 2003) (citing *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("[t]he amount of damages is invariably an individual question and does not defeat class action treatment.").

### G. Superiority

"The superiority criterion requires that class action be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *In re Celexa,* 325 F.R.D. at 540 (quoting Fed. R. Civ. P. 23(b)(3)). "In evaluating superiority, courts consider 1) the interests of class members in individually litigating separate actions, 2) the extent and nature of existing litigation, 3) the desirability of concentrating the litigation of the claims in a one forum and 4) the difficulty in managing a class action." *Id.* (citing Fed. R. Civ. P. 23(b)(3)).

These factors all weigh in favor of certification.  Separate individual litigations would not

be desirable or even feasible for any individual class member, as they would likely only result in recoveries amounting in only a few dollars each and would not even come close to covering the costs of litigating them.  The extent and nature of this litigation is such that real efficiencies would be drawn from the class mechanism, as the vast majority of the central issues to be determined are class-wide issues.  It is desirable to concentrate the litigation in one forum in order to defray the risk of inconsistent verdicts and redundant judgments in other districts.  Finally, since this case has settled, there will be no issue as to manageability.  Accordingly, superiority is met.

## VI.     NOTICE TO PROSPECTIVE CLASS MEMBERS WAS ADEQUATE

In determining whether to grant final approval of a proposed settlement, the Court must find that adequate notice was issued to all prospective class members, in accordance with due process concerns and Rule 23.  In order to satisfy due process considerations, notice to class members must be "reasonably calculated, under all the circumstances, to appraise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Garcia-Rubiera v. Calderon* (1st Cir. 2009) 570 F.3d 443, 456 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  In other words, the notice must describe fairly, accurately and neutrally the claims and parties in the litigation and the terms of the proposed settlement.  *See Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974).

This Court has already determined that the form of Notice was proper, as the Court approved the Publication Notice, Summary Notice and Long-Form Notice and the notice methodology as described in the Settlement Agreement.  *See* Order Granting Plaintiffs' Motion for Preliminary Approval, Dkt. No. 37.  Plaintiffs now seek Court determination that the notice program actually engaged in was fair, adequate and appropriate.

Rule 23(c)(2)(B) requires the class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  It is not necessary that every Class Member receive actual notice to meet due process considerations, only that reasonable efforts be made to reach all class members.  *Hill v. Street Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728 at *1 (D. Mass., Jan. 8, 2015) (*citing*

*Silber v. Mabon,* 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).)

The notice plan, as approved by the Court, has been fully implemented by ILYM.  On January 19, 2022, ILYM caused the Court-approved Notices to be emailed to the 1,565,338 Class Members.  Molina Decl. at ¶4.  The Publication Notice was publicized through a 60-day banner ad campaign with ad placement through Google, Facebook, Instagram, YouTube, and other websites. *Id.* at ¶6.  Further, the Summary Notice, Publication Notice and Long Form Notice were also published on the Settlement Website.  *Id.* at ¶5.

At this time, 2,987 valid claims have been received.  Molina Decl. at ¶12.  Further, no Class Member has objected to the Settlement, and only four Class Members have requested exclusion from the settlement.  Molina Decl. at ¶¶7-8.

Accordingly, the notice program properly notified Class Members of the Settlement and their options and satisfied the requirements of due process.

## VII.   THE COURT SHOULD APPROVE SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

"Because a named Plaintiff is an essential ingredient in any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit*." In re Puerto Rican Cabotage Antitrust Litigation*, 815 F.Supp.2d 448, 468 (D.P.R. 2011) (citing *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F.Supp.2d 184, 189 (D. Me. 2003)); *see also Carlson v. Target Enterprise, Inc.*, 447 F.Supp.3d 1, 7 (D. Mass. 2020) ("Incentive awards are an appropriate means for encouraging individuals to undertake the responsibility of representative lawsuits.").  Indeed, Courts "routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.*

The Settlement provides for a Class Representative Service Award of $2,000 to each of the named Plaintiffs, Jessie Serrano and Jozef Mangual Serrano (the "Class Representatives").  This payment is intended to recognize the Class Representatives' substantial effort and risks in assisting

with the prosecution of this action on behalf of the Class.  Throughout this litigation, Class Representatives have cooperated with Class Counsel and taken actions to protect the interests of the Class.  Marquez Decl. at ¶25.  Class Representatives kept themselves appraised of the developments and actively participated in this litigation.  Class Representatives provided valuable information to Plaintiffs' counsel, which aided them in the investigation of their claims and establishing the violations alleged in Plaintiffs' Complaints.  *Id.*.  Absent Class Representatives' participation and assistance, the recovery provided for in this Settlement for the Class Members would not have been possible to obtain.  *Id.*

Class Representatives faced many risks in bringing this action as a class action.  The Class Representatives assumed the expense and risk in prosecuting this matter and considered the best interests of the class rather than their personal interests in agreeing to mediate and settle this matter.  *Id.* at ¶26.  Without the effort and risks taken by the Class Representatives, Class Members likely would not have received any of the benefits provided for in the Settlement.  *Id.*  Indeed, Class Representatives' efforts have already resulted in a provision of at least $2,115,000.00 in value to the Settlement Class.  *Id.* at ¶20.

In sum, this class action would not have been possible without the aid of the Class Representatives, who put their own time and effort into the litigation, sacrificed the value of each of their own individual claims, and placed themselves at risk for the sake of the other Class Members.  The requested incentive award of $2,000 to each of the Class Representatives is therefore reasonable to compensate them for their active participation in this lawsuit.

## VIII.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court approve the Settlement as fair, reasonable and adequate, approve Plaintiffs' request for attorney's fees and costs, and enter the proposed Final Judgment certifying the Settlement Class.

Dated: April 11, 2022                                        Respectfully Submitted,

/s/ *David C. Indiano*

David C. Indiano USDC Bar No. 200601

**INDIANO & WILLIAMS, P.S.C.**

/s/ *Thiago M. Coelho*

Thiago M. Coelho (*PRO HAC VICE*)

Justin F. Marquez (*PRO HAC VICE*)

Robert Dart (*PRO HAC VICE*)

**WILSHIRE LAW FIRM, PLC**

*Attorneys for Plaintiffs and the proposed class*